(No. 26411.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAY FLYNN, Plaintiff in Error.

*Opinion filed November 24, 1941.*

MARTIN & GARRETSON, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and SAMUEL JOSEPH NAYLOR, State's Attorney, for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Ray Flynn, was indicted in the circuit court of Hancock county for the crime of knowingly uttering a forged check with the intent to defraud Kenneth Tucker. A jury found the defendant guilty, as charged. His motions for a new trial and in arrest of judgment were denied, and he was sentenced to imprisonment in the penitentiary. Defendant prosecutes this writ of error.

The check in question, dated February 22, 1941, drawn on the First National Bank of Carthage, was for $10, payable to the order of Ray Flynn and bore the signature "Mrs. W. E. Flynn." Mrs. W. E. Flynn was defendant's mother. Defendant admits that he wrote the signature, "Mrs. W. E. Flynn," the writing on the face of the check, and the indorsement "Ray Flynn" on the back of the check. An examination of the check discloses no attempt to either disguise the signature or to copy Mrs. Flynn's signature. February 23, 1941, defendant purchased gasoline from Kenneth Tucker at the latter's service station in Carthage and tendered the check described in payment, stating, "Here's a check for $10, it is on my mother." Tucker testified that he believed the check had been signed by Mrs. Flynn, accepted it and gave the defendant the difference between the cost of the gasoline and the amount of the check. Defendant indorsed the check at Tucker's place of business and in his presence. The next day, Tucker presented the check at the drawee bank for payment. The assistant cashier refused its payment. From the bank,

Tucker and a companion, Robert Starkey, proceeded to the defendant's home near the village of Bentley where he, the only child, resided with his venerable parents on a farm. In the course of a conversation with the defendant, in Bentley, concerning the check, Tucker said, "You gave me a forged check," and defendant answered, "No, I didn't." Thereupon, Tucker exhibited the check with the bank's notation that the check was evidently forged. According to Tucker's testimony, defendant then said, "Yes, I did do that, Tuck. Will you give me two hours to get the money, in?" Tucker assented, commenting that if the money was produced at his place of business in two hours, "There would be no more said or did about it." Defendant never paid the check. Starkey corroborated Tucker's account of the latter's conversation with the defendant.

The defense interposed was that Mrs. Flynn had authorized defendant to sign checks in her name and, further, that he had no intent to defraud the complaining witness. Mrs. Flynn had a personal checking account with the First National Bank of Carthage and, so far as the bank's records disclosed, she was the only person allowed to draw checks against it. W. E. Flynn, the defendant's father, did not have a checking account on February 24, 1941. He had, however, a joint savings account with his wife. The testimony of defendant's father and mother tends to show that in January or February, 1941, the son sought and obtained permission to write checks on his mother's account, and that she did not thereafter revoke the authority granted. Mrs. Flynn testified that the first time she knew anything about the check in question was the day the State's attorney and a deputy sheriff called upon her. Her version of this meeting was that in answer to a question as to whether she wrote the check she replied in the negative and, to another question as to whether her son wrote it, she answered "I guess he did." She also declared that she had been willing at all times to have the check charged to her ac-

count and paid, but had never been asked to pay it. The witness testified further that she had deposited $30 for the defendant, a portion in her checking account and the remainder in the joint savings account; that although she could not remember the precise date, the deposit was made within the last six months, and, she believed, in January.

In rebuttal, the deputy sheriff testified that on March 3, 1941, in the presence of the State's attorney, W. E. Flynn and himself, Mrs. Flynn stated that she had not authorized the defendant to place her signature on the check. Two ledger sheets of the bank, one the checking account of Mrs. Flynn and the other the joint savings account, introduced in evidence, did not show a deposit of $30 during the month of January, 1941.

To obtain a reversal, the defendant contends that the court erred in giving four, and refusing two, instructions to the jury. Instruction No. 18 is as follows: "The jury are instructed that the rule requiring the jury to be satisfied of the guilt of the defendant from the evidence, beyond a reasonable doubt, in order to warrant a conviction, is complied with, if, taking the testimony all together, the jury are satisfied, beyond a reasonable doubt, that the defendant is guilty. The reasonable doubt that the jury is permitted to entertain must be as to the guilt of the accused on the whole evidence, and not as to any particular fact in the case not material to the issue in the case." This instruction has been repeatedly condemned as erroneous. (*People* v. *Rukavina,* 338 Ill. 128; *People* v. *Rongetti,* 331 id. 581; *People* v. *Birger,* 329 id. 352; *People* v. *Johnson,* 317 id. 430; *People* v. *Cramer,* 298 id. 509.) In *People* v. *Johnson, supra,* an instruction concluded "The reasonable doubt the jury is permitted to entertain must be as to the guilt of the accused on the whole of the evidence and not as to any particular fact in the case." Pointing out that the challenged instruction was of the same character as the instruction condemned in earlier decisions, the court observed:

"It is not correct to say that a reasonable doubt as to any particular fact in a case is not sufficient to justify an acquittal, without distinguishing between facts which are material and constitute a necessary element of the crime and those which are not so material and necessary." *People* v. *Cramer, supra,* is to the same effect.

It is true that whether instruction No. 18 constitutes reversible error depends upon the state of the record. The People maintain that the giving of this instruction was harmless error in view of several instructions given at the instance of the defendant. Conceding that the instructions given in favor of the defendant correctly state the law, it does not follow that the error in giving instruction No. 18 was cured. Persons accused of crime are entitled to have the jury instructed with substantial accuracy, and an incorrect instruction in a case where the evidence is conflicting is not cured by a correct one for the adequate reason it is impossible to determine which instruction the jury followed. *People* v. *Bradley,* 324 Ill. 294; *People* v. *True,* 314 id. 89; *People* v. *Strause,* 290 id. 259; *People* v. *Lee,* 248 id. 64; *Steinmeyer* v. *People,* 95 id. 383.

Instruction No. 4-a reads: "The jury are instructed that if they believe any witness has knowingly and wilfully testified falsely as to any material fact in issue in this case, then the jury may entirely disregard the testimony of such witness as to such matters as testified to unless he or she has been corroborated with reference to those particular matters by other credible witnesses, or facts and circumstances proved on the trial." Only two witnesses, namely, the defendant's father and mother, testified upon the question of his authority to sign the mother's name to checks. Obviously, those witnesses could not be corroborated by "other credible witnesses." It would have been better to have used the expression "other credible evidence." This instruction, as instruction No. 18, is also vulnerable because of the use of the words, "as to any material fact in issue

in this case," without explaining to the jury what facts are material. One of defendant's witnesses, Mrs. Flynn, was impeached on immaterial facts. It may well be that the jury believed she had been impeached, instead, upon material facts. Instruction No. 4-a should not have been given.

Instruction No. 19 defines reasonable doubt. This court has frequently announced that an instruction should not attempt to define a reasonable doubt, as it is difficult in the extreme to find a more explicit definition of the term than the words themselves. (*People* v. *Casey,* 350 Ill. 522; *People* v. *Rogers,* 324 id. 224; *People* v. *Johnson, supra.*) This instruction should not have been given in the present case.

Instruction No. 8 enumerated and defined the various kinds of forgery in the language of the statute. Defendant was charged with and convicted of the crime of uttering a forged instrument. The offenses of (1) making and (2) uttering a forged instrument are distinct and independent crimes. (*People* v. *Vammar,* 320 Ill. 287.) Much of the statute had no application whatever to the offense alleged to have been committed in this case. Such an instruction should not be given in the form presented. *People* v. *Moshiek,* 323 Ill. 11.

If the correctness of instructions Nos. 19 and 8 were the only questions as to the propriety of instructions before us we would hesitate to say they constitute reversible error. Apart from the question of defendant's intent to defraud Tucker, the evidence was conflicting as to his authority, whether express or implied, to sign his mother's name to checks. It was, accordingly, highly important that the instructions to the jury be correct. Prejudicial error in instructions will effect a reversal of a judgment of conviction where the evidence, as here, is conflicting and the proof of guilt is not so conclusive that no verdict other

than one finding the defendant guilty could reasonably have been returned. *People* v. *Ryan,* 349 Ill. 637.

Refused instructions Nos. 1 and 2 were fully covered by those given. Repetition is not required, and there was no error in refusing these instructions. *People* v. *D'Andrea,* 361 Ill. 526.

Since the cause must be tried again because of the erroneous instructions given on behalf of the People, defendant's contention that the evidence is insufficient to sustain the jury's verdict does not require consideration. This opinion, it follows, is not to be construed as passing upon the weight of the conflicting testimony.

The judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*