(No. 26663.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLAUDE A. WELLS, Plaintiff in Error.

*Opinion filed September 25, 1942.*

FRANCIS J. KENNEDY, and ALBERT E. BUCCIERE, (EVERETT JENNINGS, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

On February 28, 1941, the grand jury returned an indictment of two counts in the criminal court of Cook county against the defendant, Claude A. Wells. The first count charged the defendant with feloniously, fraudulently and falsely forging and counterfeiting the handwriting and signature of Albert E. Beaurline, otherwise called A. E. Beaurline, secretary of the Bluebird System, Inc., to a certain purported check and order for payment of money that purported to be drawn by said Bluebird System, Inc., with intent thereby, then and there, to prejudice, damage and defraud said Bluebird System, Inc. The second count charged

that the defendant feloniously, fraudulently, wilfully and falsely, passed as true and genuine the false, forged and counterfeited handwriting and signature of Albert E. Beaurline, otherwise called A. E. Beaurline, secretary of the Bluebird System, Inc., a corporation, said signature being written upon a certain purported check and order for payment of money, with intent thereby, then and there, to prejudice, damage and defraud said Bluebird System, Inc.

Motion was made to quash the indictment, which motion was overruled. On a trial before a jury the defendant was found guilty as charged. His motions for a new trial and in arrest of judgment were denied and he was sentenced to the Illinois State penitentiary for the crime of forgery in manner and form as charged in the indictment, for a term of years not less than one nor more than fourteen, as provided by law. Defendant prosecutes this writ of error.

The check in question, dated October 30, 1939, and drawn on the Argo State Bank, Argo, (Cook county,) Illinois, was for $500, payable to the order of C. A. Wells and bore the signature of A. E. Beaurline. Defendant admits that he wrote the signature of A. E. Beaurline and the endorsement C. A. Wells on the back of the check.

The defendant had lived in Chicago for a number of years and had been employed by various firms in the city as an auditor and accountant and had done some work on income-tax matters for various firms. According to the testimony of many of these employers, he had always borne a good reputation for honesty and integrity.

In November, 1936, he was employed on a monthly retainer basis of $50, with the Bluebird System, Inc., a corporation, which was engaged in the business of transporting for hire passengers by bus, in the vicinity of Chicago, Illinois.

Defendant's duties were to make monthly statements, discuss the statements with the president or secretary and

handle income tax or other tax matters of the corporation; that he continued in that capacity until October, 1939. However, his status changed as far as compensation was concerned, the compensation being increased in 1938 to $100 per month, due to the fact it was agreed he was to spend more time in making detailed records, entries in the cash book and in the voucher register, previously made by the bookkeeper of the company.

During the time the defendant was employed with the Bluebird System, Inc., there was a change in bookkeepers and also the defendant transacted some business with A. E. Beaurline, purchasing a lot from him and at one time loaned the Bluebird System, Inc., around $500.

The employment progressed satisfactorily, it would seem, with all concerned until the latter part of October 1939, when the particular check in question in the sum of $500, purporting to be signed by A. E. Beaurline for the Bluebird System, Inc., drawn upon the Argo State Bank and payable to C. A. Wells, was denied payment at the Argo State Bank, on the ground that the signature was not genuine; that this refusal of payment was made after the check was deposited by C. A. Wells in his account at the First National Bank of Chicago, Illinois, and had been sent to the Argo State Bank for payment, where the Bluebird System, Inc., was maintaining a bank account.

The defendant admitted that he drew this check, signed the signature of A. E. Beaurline and deposited same to his account in the First National Bank of Chicago, but claimed that he did so under authority and with the consent of A. E. Beaurline.

The defendant testified that he was an auditor and accountant and had done considerable income tax work; that he took the State examination as a certified public accountant in Indianapolis, Indiana, in 1926, and passed that examination; that he had worked as a public accountant for Arthur Anderson & Company in Chicago, for the

Oakland Motor Car Company at Pontiac, Michigan, and that he was a field supervisor, working in the New York City office with this concern until June, 1927; that as a certified public accountant he still has clients in New Jersey and Pennsylvania; that he moved to Chicago in 1933 and worked for many concerns as an auditor, accountant and tax expert, and was employed by the Bluebird System, Inc., in November, 1936, to make monthly statements, discuss the statements with the president or secretary and to handle income taxes and other tax matters; that he met A. W. and A. E. Beaurline in April or May of 1936; that A. Willard Beaurline was president of the Bluebird System, which was incorporated, and that A. E. Beaurline was vice-president; that he was employed by the Beaurlines to examine the assets taken over by the Bluebird Coach Lines, Inc., of Illinois and the Bluebird Coach Lines, Inc., of Indiana; that he drew the check for $500, which it is alleged he forged and was dated October 30, 1939; that he wrote it and signed the name of A. E. Beaurline to the check; that he did so after he had secured permission so to do from A. E. Beaurline. He testified that in October, 1939, about October 20, he had a conversation with A. E. Beaurline, A. W. Beaurline not being present, and told him he wanted some money at that time and stated to him he had some money coming and that A. E. Beaurline replied, "Well, if you have, you are entitled to it;" that later he needed some money and looked in his bank account and saw he didn't have sufficient money to make a purchase that he wanted so he called A. E. Beaurline and asked him, "If I sign your name to it, will you O.K. it at the bank tomorrow?;" that A. E. Beaurline said he would.

Defendant further testified that after that was done, he signed A. E. Beaurline's name in writing, took the check down to the bank, left it in his bank account, but as he didn't feel right about the matter, thinking it was not right to sign his name to the check like that, he got some money

and made his bank balance over $500, in the First National Bank, where he was doing business. Then he made out a check to the Bluebird System, Inc., and deposited that check to the account of the Bluebird System, Inc.; that this deposit was made on October 31, 1939; that two days later A. W. Beaurline called him up and asked him to come down; that A. W. Beaurline stated to him, "You should not have done this;" and that he explained how the transaction was brought about and that Beaurline said, "Well, I accept your explanation but still you should not have done it;" and I said, "That is all right, that is the reason I made this deposit;" and he said, "Never do anything like that again;" and I said, "All right, I won't."

A. E. Beaurline denied he ever authorized the defendant to sign his name to any checks or to withdraw from the bank account of the Bluebird System like amounts to the defendant's personal account at the First National Bank or authorize the alteration of any checks he had signed.

A. W. Beaurline, the president of the company, testified that he and A. E. Beaurline, his brother, were the only ones authorized in the corporation to sign checks for the Bluebird System, Inc., and his brother was authorized to sign checks only in emergency when he was absent.

The particular check, which it is alleged was forged, was written on a check of the Bluebird System, Inc., payable at the Argo State Bank and was made out to the defendant, C. A. Wells, and, as he admitted, was cashed by him, his claim being that he secured authority from A. E. Beaurline to sign his name to such check, and which is denied by A. E. Beaurline. As to whether or not such authority was given, we have only the testimony of the two witnesses other than other circumstances in the case as shown by the evidence. The defense interposed was that A. E. Beaurline had authorized defendant to sign the check in question.

The prosecution introduced in evidence, over the objection of the defendant, photographs of other checks made by a recordak machine; that these photographs were offered in evidence for the purpose of showing that other checks had been forged by the defendant at other times or near the time of the forgery alleged in the indictment although it is contended by the People that it was not their intention to introduce these exhibits of the so-called checks made by a recordak machine, as so-called evidence of forgery; that they were introduced as primary proof of the records of the bank to show intention of the defendant. We cannot, however, see any difference here, as, in either case, it is necessary that such evidence, to be admissible, must be competent.

Recordaks are photostatic reproductions of the face of checks, and recordak machines, to show facsimiles of checks, are now being used in most up-to-date and active banking institutions and such system is common and understood in banking circles. However, the question of the admissibility of such photostatic reproductions in the courts, as primary evidence, is a question that has not been presented to the courts of our State or any of the other States, although it seems this question was presented in the case of *United States* v. *Manton,* 107 Fed. (2) 834, at page 844, where Mr. Justice Sunderland, in delivering the opinion of the court, said: "The trial court over objection admitted in evidence what are called recordak facsimiles of checks. The objection made to this ruling of the court is that such facsimiles do not constitute the best evidence. These recordaks are photostatic reproductions of the face of checks which have been paid and they were offered as evidence of such payments. It is argued that the original checks themselves were the best evidence and that their absence should have been accounted for as a prerequisite to the admission of the recordaks. With this contention we

cannot agree. These recordaks are made and kept among the records of many banks in due course of business and are within the words of 28 U.S.C.A. 695." As proof of payment they constitute not secondary but primary evidence.

The defendant in error cites no authority in Illinois, neither does search prevail to support its contention that the facsimiles of checks are admissible as primary evidence, and we are not at all impressed with its position that this ruling should have weight in Illinois, unless we could, as well, find some encouragement by legislative authority. A careful reading of *United States* v. *Manton, supra,* reveals that the recordaks were admitted under act of Congress where special authority was given pertaining to writings and records made in regular course of business. (28 U.S.C.A. par. 695.) We have no such legislative authority in this State which would support holding facsimiles of checks as being the best evidence or primary proof. We are bound by the rules of law of our State pertaining to evidence. The weight of authority, as well as sound principles of reason, is in accordance with the rule that questions of evidence are governed by the law of the forum, and the same general principle applies to the competency, admissibility, quality and degree of evidence.

It is well settled that the legislature of a State has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof. (*Stolle* v. *Mitchell,* 309 Ill. 341; *Shellabarger Elevator Co.* v. *Illinois Central Railroad Co.* 278 id. 333.) Evidently no change has been made by the legislature which would make facsimiles of checks admissible as primary evidence, and bank records are no exception to the rule.

The question then presents itself as to the rules of evidence in this State as to the admissibility of photographic representations of writings of the same size as the original writing, and we find such photographic representation should be excluded if the original document is produced or

is obtainable and not produced, on the ground that the photograph in such case is but secondary evidence. (*Howard* v. *Illinois Trust and Savings Bank,* 189 Ill. 568; 2 Wigmore on Evidence (2d ed. 1923) par. 797.) If the original is not obtainable the photograph thereof is admitted if, of course, a sufficient foundation is laid and the photograph is properly verified. *Stitzel* v. *Miller,* 250 Ill. 72; *Hayes' Estate,* 55 Col. 340; 2 Wigmore on Evidence (2d ed. 1923) par. 797.

This court appreciates the fact that photography has reached an advanced stage of perfection and that photographs or photostatic copies in some cases, can be an invaluable aid in assisting the court or jury, but we believe this assistance can as well be maintained by adhering to the fundamental law pertaining to the best evidence rule. There is no difference in primary or secondary evidence as to the weight. The difference is in the preliminary proof necessary to lay the foundation for introduction. The preliminary proof laying the foundation for the introduction of secondary evidence of contents of lost instruments is addressed to the court, and the court determines whether a sufficient showing has been made to permit secondary evidence to go to the jury. Whether such instrument was wilfully or accidently destroyed is material for laying the foundation for secondary proof. *Grimes* v. *Hilliary,* 150 Ill. 141.

There was no attempt by defendant in error to submit to the court evidence which would lay the foundation for the introduction of secondary evidence. This could easily have been done. The position was taken and urged by the defendant in error that these facsimile reproductions were the best evidence, and no attempt was made as to introducing preliminary proof laying the foundation for the introduction of secondary evidence. In order to let in secondary evidence of contents of a written instrument, the person to whose possession it was last traced must be produced

unless this is shown to be impossible, in which case search among his papers must be proven if that can be done. In all events search must be made for the paper with the utmost good faith and the search must be as thorough and diligent as if the rule were that all benefit of the paper would be lost unless it be found. (*Prussing v. Jackson,* 208 Ill. 85; *Mullanphy Savings Bank* v. *Schott,* 135 id. 655; *Sturgis* v. *Hart,* 45 id. 103; *Cook* v. *Hunt,* 24 id. 536.) This same rule is applicable in criminal cases.

We are of the opinion that the photographic record in this case with reference to the introduction of evidence, occupies the same place as a book record would have occupied, showing a record of the transit items. The photographic system was adopted by the bank for the purpose of improving the former clerk's transit sheet that was kept by the bank and while this was a decided improvement in the records of the bank as to the handling of large numbers of checks, it did not in any way change the rules of evidence as to their application. The clerk's transit sheet, which the witness testified was the former method of keeping such items until the later photographic record was kept, could only be used in evidence as to checks where it was shown that the best evidence was not obtainable. Certainly the photographic facsimilies of the checks, while they, of course, were better than the clerk's transit sheet as to the completeness of the record, they certainly were, so far as the rules of evidence were concerned, in the same position as such clerk's transit sheets. If it had been necessary to show the contents of a check, such showing should be made by the best evidence, which would have been the check itself, and if the check was lost or otherwise could not have been accounted for, then, after a foundation has been laid, secondary evidence is proper. Under the former method of handling such transit items, the clerk's transit sheets would have been admissible to show that such a check cleared through the bank, and if a photograph had been

taken at the bank, such photographic reproduction could properly have been shown, but before the foundation had been laid, the trial court permitted the introduction of evidence to show the checks in question without accounting for the originals, which of course would have been the best evidence.

We are of the opinion that the evidence objected to should not have been admitted, and that under the circumstances the error in admitting such evidence should not be disregarded as harmless, for it may have led to the verdict. Defendant has a right to stand before a jury unprejudiced by incompetent and irrelevant evidence.

With this evidence eliminated, we have the question presented as to whether or not the jury, without this evidence, would have returned a verdict of guilty.

This evidence being out, it was at least a close question as to the guilt of the defendant, who must be proven guilty beyond a reasonable doubt. In any case where the competent evidence leaves a close question for the jury to decide as to the guilt or innocence of the defendant, it is necessary that the jury be properly instructed. It is thus necessary to examine the instructions as offered by the People, which were objected to as to their correctness.

Instruction No. 18, given by the People, was as follows:

"18. If the jury, after considering all the evidence in this case, find from the evidence that any witness has, or witnesses have, knowingly, wilfully and corruptly testified falsely to any fact material to the issue in this case, they have the right to entirely disregard the testimony of such witness or witnesses, except in so far as his or their testimony is corroborated by other credible evidence or by circumstances in evidence."

The defendant urges that the said instruction was prejudicial to the defendant in this case and its giving was error, and cites in support of his contention the case of *People* v. *Flynn*, 378 Ill. 351, where the court in discussing a like

instruction at page 355, said: "This instruction, as instruction No. 18, is also vulnerable because of the use of the words, 'as to any material fact in issue in this case,' without explaining to the jury what facts are material." The defendant in error insists that the language in the instruction in *People* v. *Flynn, supra,* is not identical with the instant instruction and cites the cases of *Hirschman* v. *People,* 101 Ill. 568, and *People* v. *Lewis,* 252 id. 281, and contends that though attacked many times since, the instruction has been upheld by this court as proper since that time. We are unable to agree with this statement. Instructions with this and similar wording have been before this court many times. Undoubtedly the rule is, that where this instruction is given, other instructions should be given defining the issues, so as not to throw the burden on the jury of ascertaining what are and what are not material issues of fact. Such an instruction has been many times condemned and held to be improper as it leaves the jury to determine the legal question as to what are material facts or essential elements of the crime charged. It has been held, however, not to constitute reversible error to give such instruction where other instructions given in the case define the essential elements of the crime with which the defendant was charged. *People* v. *McGrane,* 336 Ill. 404; *People* v. *Hartwell,* 341 id. 155.

It does not appear in the instant case that other instructions are sufficiently set forth to apprise the jury what are and what are not material issues of facts. The only thing we could find in the record was an instruction as to forgery, which only presented an abstract proposition of law.

This instruction has been repeatedly condemned and, by the weight of authority, it is improper. *People* v. *Flynn, supra; People* v. *Cramer,* 298 Ill. 509; *People* v. *Johnson,* 317 id. 430; *People* v. *Birger,* 329 id. 352; *People* v. *Rongetti,* 331 id. 581; *People* v. *McGrane, supra.*

Many leading questions were asked by the prosecution over the objection of the defendant, but since the cause must be tried again by reason of the admission of improper evidence and because of the erroneous instruction given on behalf of the People, these do not require consideration, as they may not arise on another trial.

The judgment of the criminal court is reversed and the cause is remanded.

*Reversed and remanded.*