(No. 28045.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAYMOND LYNN, Plaintiff in Error.

*Opinion filed September 19, 1944.*

JOHN M. KARNS, and HAROLD J. BANDY, both of East St. Louis, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and LOUIS P. ZERWECK, State's Attorney, of Belleville, for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

An indictment returned in the circuit court of St. Clair county in September, 1936, charged Raymond Lynn with the crime of robbery. When the indictment was returned, defendant was in custody in St. Louis, Missouri, being held for a crime preferred against him in that State. Later he was convicted, sentenced to the penitentiary and, after serving more than six years for the Missouri offense, he was brought to Illinois and placed on trial for the robbery charge. He was convicted and sentenced to the peniten-

tiary for not less than one nor more than twenty years. He brings the cause to this court by writ of error.

As grounds for reversal, he contends that there was reversible error in the instructions and in the remarks of the assistant State's Attorney made in his argument to the jury, and that the evidence was not sufficient to establish guilt beyond a reasonable doubt.

The evidence offered on behalf of the People shows that on the morning of September 14, 1936, two men, one of whom was armed with a gun, entered the grain and feed store of William Batdorf and Walter Batdorf in Belleville, and by force of arms took $155 from the Batdorfs' cash register. The two owners were the only persons present. They were sitting at a desk when the robbers entered and told them it was a "stick-up." One of the robbers struck William Batdorf on the head with a gun, then ordered Walter to open the cash register from which the money was taken. The robbers carried handkerchiefs in their hands which they moved across their faces and during the course of the commission of the crime they ordered the Batdorfs not to look at them. The commission of the offense occupied a very short time, after which they fled in an automobile. About five days thereafter, the Batdorfs identified defendant, who was then in a jail in St. Louis, as one of the men who committed the robbery. The Batdorfs were the only witnesses who gave material testimony for the People. They stated that they had never seen defendant prior to September 14, 1936, but on the trial both identified him as one of the robbers. In the identification of defendant in the St. Louis jail, defendant was not brought before the Batdorfs in the presence of other prisoners but was exhibited to them alone as a suspect.

Defendant's sole defense was an alibi. He and one Haven testified that on September 11, 1936, Haven was married, that the marriage ceremoney was performed by a justice of the peace at Granite City, and that defendant,

552

a Mr. and Mrs. Roberts, Norman Farr and a Mrs. Lashley were present. Haven and defendant testified that after the marriage they drove to St.Louis and the following day Haven and wife, the two Robertses and defendant went by automobile to Iola, Kansas, to visit relatives of the Robertses. Their evidence shows that they stayed at Iola until September 17, and then returned to St. Louis. Defendant was taken in custody by the officers of St. Louis immediately after he returned. The evidence of Haven and defendant accounts for defendant's whereabouts when the crime was committed and places him where it would have been impossible for him to have committed the offense. Norman Farr did not accompany the party to Kansas but he testified that he saw them leave St. Louis September 12, and that he did not see them again until sometime after September 14. No other witnesses testified for defendant.

Complaint is made of an instruction tendered by the People which told the jury "that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act, and unless the proof in a case covers the whole time, so as to render the commission of the crime by the defendant impossible or highly improbable, then that defense is not available to such defendant."

The issue of fact that the jury had to determine was whether the alibi evidence was sufficient to raise a reasonable doubt as to defendant's guilt. If the jury concluded that it created such a doubt, then he was entitled to an acquittal. If the instruction had been the only one given pertaining to the law of alibi evidence, it would, as an abstract proposition of law, have been susceptible of misleading the jury. However, in addition, the jury was instructed that where an alibi is relied on as a defense, in order to maintain it, it is incumbent on the defendant to

support it by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant. An instruction tendered by defendant explained the meaning of the defense of an alibi and told the jury when such a defense was once established it was complete and that the defendant was entitled to acquittal. It stated that "After considering all the facts and circumstances in evidence in this case, both for the prosecution and the defense, including the defendant's evidence in support of his defense of alibi, if you have a reasonable doubt that the defendant was present at the scene of the crime and participating in same, when the crime was committed, it is your duty to give the defendant the benefit of that reasonable doubt and find him not guilty."

In his criticism of the instruction in question, defendant cites and relies upon *People* v. *Lacey*, 339 Ill. 480; *People* v. *Frugoli*, 334 Ill. 324; *People* v. *Reno*, 324 Ill. 484, and *People* v. *Braidman*, 323 Ill. 37. Those cases were considered and distinguished in *People* v. *Gasior*, 359 Ill. 517. The facts in this case and the instructions given on the law of alibi bring this case within the principles announced in the *Gasior case* and *People* v. *Thompson*, 321 Ill. 594. The evidence in this case and the other instructions support the giving of the instruction in question.

Another instruction told the jury that it was not necessary that every incriminating fact or circumstance in evidence be established beyond a reasonable doubt but that it was sufficient if it believed every material allegation in the indictment had been proved beyond a reasonable doubt. Another instruction as to the credibility of witnesses told the jury that if any witness had wilfully, knowingly and corruptly sworn falsely as to any matter material to the issues of the case, it was at liberty to disregard the evidence of such witness unless corroborated by other credible evidence.

The practice of giving such instructions without explanation as to what are "material facts" or "material allegations" has been condemned. (*People* v. *Berne,* 384 Ill. 334; *People* v. *Wells,* 380 Ill. 347; *People* v. *Flynn,* 378 Ill. 351.) Other instructions explained to the jury the essential and material elements of the offense charged, and taking the instructions as a series the jury was not at liberty to determine its own standard of "material facts" or "material allegations." As to the instruction in reference to the credibility of witnesses, it is sufficient to refer to defendant's instruction on the same subject. It told the jury that if it believed any witness had testified falsely to any fact at issue in the case it could disregard the entire testimony of such witness except insofar as it was corroborated by other credible evidence. Having tendered such an instruction, defendant would not be in a position to criticize one tendered by the People containing the same advice. Taking the instructions as a whole, they stated the law correctly.

The most serious question in the case pertains to the remarks made by the assistant State's Attorney in his closing argument to the jury. As stated, the evidence shows that defendant had served a term in the penitentiary in Missouri and had been in continuous custody since September 17, 1936. Evidently anticipating that such fact would create sympathy with the jury, the assistant State's Attorney in his closing argument said: "The Board of Pardons will undoubtedly give consideration to the fact that defendant Lynn has just finished serving a penitentiary sentence of about seven years. And in this case he will probably not be required to serve more than one year because of that." The court immediately sustained an objection to such argument and admonished the jury to disregard it. The jury was told that any reference to action by the Board of Pardons should not have been made and that it should not give it any consideration.

Counsel for the People contend that the argument of defendant's counsel opened the way for the statement made by the assistant State's Attorney, and that, having invited it, he can not now be heard to make complaint. The record does not support such contention. The only part of the arguments appearing in the record is that which is above quoted. Counsel in their respective briefs indulge in their own interpretations as to what was said by defendant's counsel in his argument and they do not agree as to that matter. Since it does not appear in the transcript of proceedings, it must be disregarded, and the question will be disposed of on the statement set forth in the record.

It needs no argument to demonstrate that, under the circumstances shown by the facts in this case, the reference to the future action of the Board of Pardons might influence the jury in determining whether defendant was guilty. The only question is as to whether the court's instructions to disregard it were sufficient to remove any effect it might have had upon the minds of the jurors. The court couched his instructions in strong language but, under the circumstances of this case, we do not believe it can be safely concluded that the jury thereafter proceeded to a consideration of the question of defendant's guilt in the same frame of mind and the same attitude toward the case as though the statement had not been made. The assistant State's Attorney, as one of the chief law enforcing officers of the county, undertook to tell the jury what effect defendant's Missouri imprisonment would have upon the action of the Board of Pardons and, without doubt, it might have been a material factor with the jury in determining that defendant was guilty. Under the circumstances of this case, the making of the statement to the jury constituted reversible error.

For the reasons assigned, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*