(No. 30134.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY HOFFMAN, Plaintiff in Error.

*Opinion filed January 22, 1948.*

DARROW, SMITH & CARLIN, WILLIAM B. STERNBERG, and JOSEPH A. MOGILL, (WILLIAM W. SMITH, and WILLIAM L. CARLIN, of counsel,) all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and W. S. MIROSLAWSKI, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Stanley Hoffman, hereinafter referred to as defendant, was sentenced by the criminal court of Cook County to a term of not less than fifteen nor more than twenty years in the Illinois State Penitentiary by reason of a conviction for the alleged crime of taking indecent liberties with a minor child, five years of age. The defendant, 27 years of age, was at the time of his indictment and conviction, on parole from the Illinois State Penitentiary for the crime of burglary for which he was placed on parole on November 28,

1944. The crime charged here happened on July 9, 1945, and trial was had before a jury and a verdict of guilty returned on February 21, 1946.

The affair out of which the indictment arose happened on July 9, 1945, at approximately 2:30 P.M. in the afternoon in the rear of a building at 2744 North St. Louis Avenue, Chicago, near a stairway close to which were several large oil drums.

On that day and at that time a woman witness for the State, who was a resident of the building, looked out the window and saw a man sitting among the oil drums with the five-year old prosecutrix sitting on his lap very close to him. The witness could not identify the man, inasmuch as she could not see his face because of an obstruction on the porch. This witness did not identify the defendant. However she did call the police. Shortly thereafter the witness saw the mother of the prosecutrix come home and called to her and told her of the man in the back yard. She saw the mother pick up something and run over and fight with the man and then saw the man running out of the back yard with the mother chasing after him.

The mother of the child testified that about 2:45 of the afternoon of July 9, 1945, she arrived home through the rear of the yard, walked into the passageway where she saw the defendant sitting on the concrete next to the oil drums and holding the little girl on his lap. She further stated that she could see his face and that he was bent over with his head down toward the child and she heard him call the child "Honey." She opened the gate and yelled at the man to leave the child alone and when he did not move she ran over and grabbed his hair and pulled his head. In pulling the man to his feet she pulled some of the hair from his head and then engaged in a struggle with him. The man attempted to go after the child again and the mother struck him on the side of the face and the man hit her back on the arm. She noticed that his privates were

exposed and he ran from the yard back toward the alley and through the alley and disappeared. The mother testified that she did not know the man's name but that she had seen him two or three times at a cocktail bar in the neighborhood and that he had tried to pick her up in the bar on several occasions. She then stated that the police came and took the child to a doctor who examined the child and found lacerations and blood. Later in the evening a police officer came to her house and she and her husband and the officers went to the cocktail bar attempting to locate the man. Later the police officers took her to the defendant's place of employment where she saw him and identified him.

A police officer also testified that the mother gave him a description of the person who molested the child and that he had a description of the clothing and general appearance. He further stated that he was unable to ascertain whether or not any hair had been pulled from the defendant's head and had sent the samples given him by the mother to the police laboratory for analysis. He further stated that the defendant denied the crime when he was arrested.

The defendant set forth an alibi for the time of the alleged crime, claiming that he was not in the vicinity of the building at 2744 North St. Louis Avenue at any time on July 9, 1945; denied he molested the child in question or that he had struck the mother; denied that he had been drinking on that day and further testified that on the afternoon of July 9, around the hour of 2:30, he was at his mother's house at 2134 North Ridgeway where he had gone about nine in the morning because he was sick; that he had been to a birthday party at his mother's house the night before and that for almost the entire previous day and the day of the alleged crime had been with someone at almost all the time. He further stated that he did not leave his mother's house on the day of July 9

until about 4:30 in the afternoon when he went to the cocktail bar where he met his sister, Evelyn, and that while he was there some police officers came in and looked him over but did not arrest him. He further denied that he had ever seen the people prosecuting him.

Evelyn Hoffman, a sister of the defendant, testified that on July 9, 1945, she met defendant at about ten minutes to five at the tavern where they remained until six, during which time policemen walked in and looked defendant over and made the statement that defendant was not the man. She testified that the defendant was not drunk at any time he was with her that night. She further stated that she received a message from the father of the child involved in the cause and that during various conversations with him he had told her that if he received the sum of $3000 from her or her family the prosecution would not take place inasmuch as the mother of the child was not sure that she had identified the proper party. These conversations as to the payment of money to the father of the child were also testified to by another sister of the defendant.

The mother of the defendant and one Ratz, an electrician, testified that on July 9, 1945, he was at the home of the defendant's mother doing some work and that he got there about 1:30 and saw there the defendant's mother, his two sisters, the defendant and a young fellow whom he had never met before. One Gibson, also a witness for the defendant, testified that on July 9, 1945, he was present in the home of the defendant's mother from approximately 12:30 until 4:00, that the electrician was working there and that the defendant was in the mother's home all during that time. Defendant's mother also testified as to the defendant being in her house on the date in question.

In rebuttal the State called the father of the child who denied all conversations as to requests for sums of money from the sisters of the defendant and he further stated that the offers of defendant's sister to do anything for him

if he would refuse to prosecute had been turned over to the crime commission. Another witness was called in rebuttal on behalf of the People who testified that on Sunday, July 8, 1945, she saw the defendant running with a little girl. A bartender, employed at another tavern in the neighborhood, testified that on the evening of July 9, 1945, the defendant and the sister came into the tavern and that they stayed in the tavern an hour or an hour and a half and that they then left. He further stated that the defendant was pretty full.

The expert who examined the samples of hair submitted to him with a specimen he had removed from the defendant's head testified that he was unable to state whether or not the hairs could have come from the head of the defendant.

In essence, the situation with regard to the facts is this: the defendant was positively identified by the mother of the child and also by the child. In addition, a description of the defendant was given to the police and said description could have fitted the general appearance of the defendant on the day in question. The defendant, on the other hand, offers an alibi supported by several disinterested witnesses as to his whereabouts at the time of the crime.

The defendant relies on twenty-six assignments of error which are summarized as follows: Admission of improper evidence by the People and permitting proof of other offenses; in the giving and refusing of instructions; in allowing State's counsel to make improper prejudicial statements throughout the trial and in argument, and ask improper and prejudicial questions of the defendant and his witnesses; that the verdict under all the circumstances apparent of record is contrary to the law and evidence; the verdict of the jury was insufficient to support the judgment.

During the cross-examination of the sister of the defendant, the State's Attorney asked the question, "You

were indicted as a burglar, were you not, in 1937 on November 24th?" Defendant's counsel interposed an objection which was overruled by the court. We think the court erred in overruling this objection. The sister, Evelyn Hoffman, then answered, "I was convicted upon a hearing before his Honor Judge Dunne, for grand larceny but I was placed on probation and for good behavior it was knocked off a year. I have behaved myself since. I had two years probation but for it was knocked off a year for good behavior." Following this answer the question was asked by the State's Attorney, "How many times were you arrested after that?" Following this question and an exchange between counsel, the witness answered that she was twice arrested.

It is urged by plaintiff in error that such questions were improper and highly prejudicial. The State contends these questions were proper, not only under the law as to proof of infamous crimes, but also for the purpose of impeaching the witness. The prosecution contended it was not error to ask a witness whether she had been previously convicted of an infamous crime and the case of *People* v. *Halkens,* 386 Ill. 167, is cited in support of this proposition. We are in full accord with what we said, in the *Halkens case,* but in that case we fully and succinctly pointed out that even though not a defendant, the witness can be required to testify only to former convictions involving infamous crimes and cannot be interrogated on arrests or indictments, or upon convictions of crimes not infamous, as the credibility of a witness is not presumed to be affected by anything less than the conviction of an infamous crime. The first question asked here was as to her alleged indictment. Counsel for the prosecution attempts to excuse the improper question asked of the witness, "How many times were you arrested after that?" because the witness, although compelled to answer an improper question, in doing so had volunteered more than was necessary, and for that reason

64

the prosecution had the right to continue with improper questions. We cannot agree with such logic, neither do we think it has a place in judicial procedure, or finds support in the law. In view of the importance of the testimony of the witness these questions were highly prejudicial.

The defendant further contends that the State's Attorney made improper and prejudicial statements throughout the trial and in argument to the jury and asked improper and prejudicial questions of the defendant and his witnesses, all of which require a reversal of the verdict in this cause. During the course of his argument to the jury the State's Attorney referred to the alibi as being false and the sister, Evelyn, as an ex-convicted burglar. The State's Attorney further referred to the previous conviction of the defendant on the charge of burglary and made mention of the fact that a person breaking into a dwelling with intent to rape was guilty of burglary. The State's Attorney also cast doubt on the alleged birthday party held on Sunday night, July 8, the day prior to the crime, and further brought forth the fact that he believed that there was lying and perjury involved in this cause on the part of the defendant's brothers and sisters. Altercations ensued between counsel for the defendant and the State's Attorney, and the State's Attorney further made reference to crime conditions in Chicago as to crimes of this type. The defendant states that this language in the argument at the conclusion of the case was in violation of an oft-stated rule of this court that a trial must be conducted in conformity to the law and that inflammatory remarks made to the jury have no place in such a trial. (*People* v. *Maria*, 359 Ill. 231; *People* v. *Weitzman*, 362 Ill. 11; *People* v. *Black*, 317 Ill. 603; *People* v. *King*, 276 Ill. 138.) The sole question under this contention is whether or not there was sufficient basis in the record to justify these statements of the State's Attorney. It must be noted that during the course of the trial rebuttal witnesses were called

by the State to break the defense of alibi of the defendant. These witnesses called in rebuttal testified that the defendant was not at home at the time he stated which would give rise to doubt as to the alibi itself. When the defendant was on the stand he was impeached by questions concerning his testimony in the cause, and during the course of the examination he admitted that he had been convicted of a burglary, thus affording some basis for his argument. The State's Attorney went too far, however, and his language was, at times, too violent. His lack of restraint and his apparent violence of language were not of the type to be desired in an officer of the court. In his argument at one point he stated, "If I had one slightest reasonable doubt about Stanley Hoffman's guilt upon my words as a man and as an American, as a father and grandfather, I would say I do not believe he is guilty and I would dismiss this case. But, I know all the facts in this case as you know various people." This was an expression of his own individual opinion and the State's Attorney should have been more restrained. We held, in the case of *People* v. *Black,* 317 Ill. 603, "The rule that it is the duty of the State's Attorney to treat the defendant fairly applies to his argument to the jury as well as to the introduction of evidence. Counsel for the State has the right to argue to the jury his belief that the evidence warrants a conviction. It is legitimate argument, if the State's Attorney so believes, to tell the jury the State's witnesses told the truth and are more credible than those for the defendant, but it is improper for him to express his own individual opinion or belief of defendant's guilt except as that opinion is based on the evidence. Twice the State's Attorney told the jury he would not ask them to send defendants to the penitentiary if he and his associate were not positive of their guilt. That was an improper and prejudicial statement, in view of the evidence. *Williams* v. *United States,* 168 U. S. 382; *People* v. *King,* 276 Ill. 138."

It is contended by the State that much of the improper argument complained of was not objected to. This is true, but it is also true that many objections were made and overruled. We held, in the case of *People* v. *Redola,* 300 Ill. 392, "It is the right and duty of a State's Attorney to present the evidence to the jury and make all legitimate argument in behalf of the People based upon it, but he has no right to indulge in any such assertions as were made in this case." As above pointed out, the State's Attorney had no right to indulge in such assertions as he made in his argument to the jury.

As to the criticised instructions, since the case must be tried again, the objections will no doubt be obviated. We have repeatedly pointed out the vice of instructions given when reference is had to material facts without pointing out what facts and issues are material. This would seem to be evident from what we said in *People* v. *Arcabascio,* 395 Ill. 487; *People* v. *Berne,* 384 Ill. 334; *People* v. *Wells,* 380 Ill. 347; *People* v. *Flynn,* 378 Ill. 351.

The questions asked of the witness, heretofore pointed out, and the argument of the State's Attorney, were highly prejudicial to the interests of the defendant. As we said in the case of *People* v. *Rongetti,* 331 Ill. 581, "One of the first purposes of orderly administration of the law is that a defendant, whether guilty or innocent, shall be accorded a fair trial. * * * There is not one law for an innocent man and another for a guilty man. Any man, however guilty of the crime charged, is entitled to be convicted according to law."

For the reasons herein given, the judgment of the criminal court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*