(No. 30646.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALFERT DEMARIOS, Plaintiff in Error.

*Opinion filed September 24, 1948.*

Joseph Lustfield, of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, of Springfield, and William J. Tuohy, State's Attorney, of Chicago, (John T. Gallagher, Melvin S. Rembe, and W. S. Miroslawski, all of Chicago, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Plaintiff in error, Alfert DeMarios, was convicted of the crime of armed robbery before a jury in the criminal court of Cook County, and sentenced to the penitentiary for a term of not less than five years nor more than twenty years. He has sued out this writ of error to review his record of conviction.

On May 15, 1947, at 1:30 P.M., a jewelry store operated by Peter Nover in the city of Chicago was held up and robbed by three armed men who took cash and merchan-

dise totaling approximately $14,500. They escaped without difficulty, and, as future events tend to show, their identity was completely unknown. Sometime previous to the Nover robbery, a jewelry store operated by one Chester Syzmanek in the city of Chicago had also been held up and robbed. On June 9, 1947, Syzmanek saw a car pass his store, and recognized it as the car which had been used by the robbers of his store. Two men were riding in the car. Syzmanek followed the pair in his own car, picking up police officer Edward Sklankowski en route, and to whom he explained his suspicions of the car. The machine being followed stopped at a garage and the driver, (later identified as Robert Wilkins,) alighted and entered the building, the second man remaining in the car which was parked around the corner from the garage. Syzmanek recognized Wilkins and identified him as one of the robbers of his store. Officer Sklankowski called other police officers and Wilkins was arrested when he left the building. The officers then approached the car and found plaintiff in error seated on the front seat. The vehicle was searched and a revolver wrapped in paper was found under the seat. Plaintiff in error expressed surprise when the gun was found, disclaimed any knowledge or ownership of it, and stated that the car belonged to Wilkins. Plaintiff in error was then taken to a police station, where he was later identified by Mrs. Nover as one of the men who had held up the Nover store on May 15, 1947. His trial and conviction followed.

At the beginning of the trial, counsel for plaintiff in error filed a motion to suppress evidence which it was alleged had been wrongfully seized, namely, the revolver found in Wilkins's car and a raincoat allegedly taken from plaintiff in error's living quarters. The motion was denied as to the revolver, but the court reserved its ruling as to the raincoat. At the trial the raincoat was not introduced into evidence so we have before us only the propriety of

the ruling as to the revolver. Plaintiff in error here contends that it was error not to suppress evidence of the revolver, because at the time it was seized there was no warrant for his arrest, and because the arresting officer did not, at the time, have knowledge of the crime for which plaintiff in error was being tried. The motion to suppress did not allege that plaintiff in error was the owner of the revolver, and the proof developed in support of the motion reveals he disclaimed ownership when the revolver was found and expressed surprise when it was found. Where a defendant does not allege or claim to be the owner of, or interested in, property seized, does not ask for its return and disclaims ownership thereof, he cannot complain of its seizure or of its use as evidence against him, as he is not then in a position of giving evidence against himself. (*People* v. *Exum*, 382 Ill. 204.) See, also, *People* v. *Reid*, 336 Ill. 421. Thus, here, where the motion to suppress failed to allege ownership in plaintiff in error, and the proof showed express disclaimer, it was not error to deny the motion. In the light of the contentions made on this point, it should be noted, too, that the *Exum case* is authority for the proposition that where an arrest is made by an officer who has reasonable ground for believing the person arrested is implicated in a crime, the officer has a right to arrest without a warrant, and to search the person arrested without a warrant.

The chief contention of plaintiff in error is that the evidence fails to prove beyond a reasonable doubt that he was one of the persons who committed the Nover robbery. The facts relating to that robbery are as follows: On May 15, 1947, at about 1:30 P.M., Stella Nover was giving lunch to her husband in a living room at the immediate rear of the jewelry store he operated. The living quarters were separated from the store only by drapes hung over an open doorway. A man clad in a full-length raincoat and described as acting "very nervous" entered the store and

upon being approached by Mrs. Nover asked to buy a watch band. When she told him she did not have the type he sought, two other men entered the store, and the man clad in the raincoat drew a gun and ordered her to the living quarters. She screamed, and as her husband came forward he was seized by the other two men, one of whom carried a shotgun. The Novers were then tied to chairs in the living quarters. While this was occurring, Mrs. Nover took two rings from her finger, threw one in a sink and secreted the other on her body. The man clad in the raincoat, whom she identified as plaintiff in error, retrieved the ring from the sink and made an unsuccessful attempt to find the other. As Peter Nover was being tied up, one of the men, whom he thought was plaintiff in error, took his wallet and safe key from him. While the man later identified as Wilkins stood in the living quarters with a gun, the other two ransacked the safe and the store. As the men were leaving the premises, Stella Nover broke her bonds, secured a gun and fired a shot after them. The police were then called but no arrests were made until Wilkins and plaintiff in error were apprehended, as heretofore described.

It appears that on the day plaintiff in error and Wilkins were arrested, Mrs. Nover viewed them twice informally at the police station where they were held. Later, both Mrs. Nover and her husband viewed the men at formal "showups" of prisoners, once on the evening of their apprehension and once on the evening following. Mrs. Nover testified that she immediately, and at all times, identified plaintiff in error as one of the robbers, but she was not sure of Wilkins. Mr. Nover testified that he thought plaintiff in error looked like one of the men, but he was unable to, and did not, make positive identification. Plaintiff in error testified that Mrs. Nover did not at any time identify him as one of the robbers; that he and Wilkins were viewed both with and apart from other men; that he was

viewed by Mrs. Nover both with and without a raincoat and that he was asked to talk to see if Mrs. Nover could identify his voice. He testified that it was not until after the second formal showup that Mrs. Nover was able to identify him, and that her actions were nervous and uncertain. At the trial Mrs. Nover again identified plaintiff in error as the man who first entered the store wearing a raincoat, who drew the revolver, and who retrieved the ring she threw in the sink. She also identified the gun found in Wilkins's car as the one used by plaintiff in error. Also, at the trial Peter Nover stated that the accused looked like one of the robbers, but he made no positive identification of plaintiff in error. Both identified Wilkins during the course of the trial.

Plaintiff in error's defense was a twofold alibi. First, that he was not acquainted with Wilkins on May 15, 1947, and, second, that at the time of the Nover robbery he was playing cards with friends at a tavern. He testified that his acquaintance with Wilkins dated from June 5, 1947, when they met at a tavern and went to the races together; that he could associate that date with his first acquaintance with Wilkins because of certain race results that were borne out by a newspaper introduced into evidence.

He testified that on May 15, 1947, from 11:00 o'clock in the morning until 7:30 in the evening, he was playing cards in a Chicago tavern known as the 1823 Club; that from time to time that day he was placing bets on horses by telephone. In this he was corroborated by a waitress in the tavern, who stated that plaintiff in error had, on that date, given her a tip on a winning horse, and by two patrons who testified to playing cards with him at the time the Nover robbery was occurring.

In rebuttal, the People introduced the testimony of a police captain that plaintiff in error's reputation for truth and veracity in the city of Chicago was bad, and that the witness would not believe him under oath. Also called in

rebuttal was an 18-year-old girl who testified that Wilkins and plaintiff in error had been together in her presence in August of 1946. By way of surrebuttal plaintiff in error testified that he had never before seen the girl who testified, and that in August, 1946, he was confined to the Cook County jail. The jail records indicated that he had been confined from June 4, 1946, to February 27, 1947.

The objection made to the foregoing evidence recited is that it is not sufficient to establish the perpetration of the crime by the accused. Since the testimony of the accuser and of the accused and his supporting witnesses is utterly irreconcilable, the issue is largely a question of determining the credibility of the witnesses and the weight to be given to their respective testimony. We have many times held that such determination is best made by the jurors who see and hear the witnesses. *People* v. *Simmons,* 399 Ill. 572; *People* v. *Buford,* 396 Ill. 158.

In cases where the competent evidence leaves a close question for the jury to decide, as to the guilt or innocence of a defendant, it is of prime importance that the jury be properly and adequately instructed. Before giving any analysis of, or passing on the weight of, the conflicting testimony, we will first consider plaintiff in error's objections to certain of the given instructions.

It is first contended that the court gave an instruction as to the test of credibility of witnesses, confined to plaintiff in error alone. It is argued that while the instruction properly states the law, it is bad in that it fails to inform the jury what tests are to be applied to other witnesses. This argument overlooks the fact that another instruction was given which defined the tests to be applied to other witnesses. Since the instructions are to be read as a series, the defect complained of was cured by another given instruction.

It is likewise urged that it was error to give the instruction for the People which reads in part as follows: "If

you believe from the evidence that any witness has wilfully sworn falsely to any material matter in this case, you may disregard the entire testimony of such witness, except insofar as it may be corroborated by other and credible evidence, or by facts and circumstances in evidence." Instructions of this nature have been before us many times and have been condemned because they leave to the jury the determination of the legal question as to what are material facts or essential elements of a crime charged. (*People* v. *Arcabascio,* 395 Ill. 487; *People* v. *Wells,* 380 Ill. 347; *People* v. *Flynn,* 378 Ill. 351.) It has been held, however, not to constitute reversible error to give such instruction where other instructions given in the case define the essential elements of the crime with which the defendant was charged. *People* v. *McGrane,* 336 Ill. 404; *People* v. *Hartwell,* 341 Ill. 155.

An examination of the record before us does not disclose any other instruction which apprises the jury of what are, or are not, material facts in issue, or which defines the essential elements of the crime with which plaintiff in error was charged. There is no instruction which advises the jury in the words of the statute as to what constitutes the crime of robbery while armed with a dangerous weapon. Nor were the jurors told in any written instruction in the slightest detail as to the charges made in the indictment returned against the defendant. The very nature and closeness of the evidence required that the jury be completely and accurately instructed on its duties in determining the credibility of witnesses. In the absence of further instructions defining material facts and elements for the jury, it was error to give the instruction complained of. Counsel for defendant in error contend that plaintiff in error cannot complain of the instruction in the absence of a showing wherein he was prejudiced by it. Since the jury was not instructed as to what the material facts were, there is no way of knowing its manner of determining them, and the

instruction complained of was thus, of itself, prejudicial to plaintiff in error without further showing.

Plaintiff in error also complains of testimony of other crimes which was permitted in evidence; of the manner in which Wilkins was displayed during the trial; and of the admission of certain of the testimony relating to his truth and veracity. Since the cause must be tried again because of the erroneous instruction given on behalf of the People, these contentions need not be given consideration at this time, since they may not arise on another trial.

The judgment of the criminal court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*