THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHRISTIAN LEE, Plaintiff in Error.

*Opinion filed December 21, 1910.*

1. CRIMINAL LAW—*evidence to prove or disprove any issue involved is competent under the plea of not guilty.* The plea of not guilty to an indictment is all that is necessary to render competent any evidence that tends to prove or disprove any issue involved, and it is no objection to testimony tending to prove one defense that it is inconsistent with other defenses relied upon.

2. SAME—*a defendant is entitled to prove that quantity of carbolic acid found in beer given by him to his wife was not dangerous.* One charged with giving a bottle of beer containing carbolic acid to his wife with intent to destroy her life is entitled to prove, if he can, that the quantity of such acid found in the beer was not sufficient to produce death.

3. SAME—*when the exclusion of evidence is reversible error.* Where an expert witness for the State has testified that the quantity of carbolic acid found in a bottle of beer given by the defendant to his wife might cause death though it was not ordinarily considered a fatal dose, it is reversible error to refuse to allow the defendant to ask a duly qualified medical witness whether he knew what the effect would be of putting such a quantity of the acid in a bottle of beer, and whether it would be dangerous, or otherwise, to the life of a person who drank the beer.

4. SAME—*when instruction as to reasonable doubt is misleading and erroneous.* An instruction in a criminal case which tells the jury that the reasonable doubt which will justify an acquittal must grow out of the unsatisfactory nature of the evidence "against him" is misleading and erroneous, in that the jury might infer that they could only entertain a reasonable doubt on the evidence for prosecution, instead of upon all the evidence, as the law requires.

5. APPEALS AND ERRORS—*when error in one instruction is not cured by another.* Error in an instruction which is susceptible of being construed by the jury as limiting their right to entertain a reasonable doubt to the consideration of the evidence *against* the defendant is not cured by another instruction authorizing them to consider the whole evidence and determine the question of guilt or innocence from such consideration, as it is impossible to say which instruction the jury followed.

6. SAME—*objections and exceptions are necessary to preserve action for review.* The action of the trial court in asking questions of witnesses is not preserved for review where there were no objections or exceptions taken thereto in the trial court.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

GRAVES & GIBBONS, and C. F. H. CARRITHERS, for plaintiff in error.

W. H. STEAD, Attorney General, and BERT W. ADSIT, State's Attorney, for the People.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

The plaintiff in error, Christian Lee, was tried and convicted at the May term, 1910, of the Livingston county circuit court on an indictment charging him with mingling carbolic acid with beer, with an intent to cause the death of Emma Lee, his wife, in violation of section 230 of the Criminal Code, which makes it a felony to mingle any poison with food, drink or medicine with an intent to cause the death of any person. Motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to an indeterminate term in the penitentiary. A writ of error has been sued out of this court for the purpose of obtaining a review of the judgment of the circuit court.

It will not be necessary to consider all of the errors assigned upon this record nor will it be necessary to go into an examination of the evidence in detail. The facts, in general outline, are as follows: Emma Lee is plaintiff in error's second wife. They have been married about fourteen years and have three children: Sophia, twelve years old, Rosie, ten years old, and Laura, nine years old. The family formerly resided on a farm in Germanville township, Livingston county, but for the last several years have resided in the village of Strawn, in said county. About six years ago Mrs. Lee was adjudged insane and sent to the hospital at Kankakee, Illinois. Some three or four

248 — 5

years ago she was released from the hospital and since that
time has been residing with the plaintiff in error and their
children in the village of Strawn. There is evidence tend-
ing to show that plaintiff in error and his wife did not live
happily together, either before she was sent to the asylum
or after her return. On one occasion before Mrs. Lee was
sent to the asylum she took carbolic acid with suicidal in-
tent, but through the treatment of Dr. John J. Klemme her
life was saved. A few weeks before the alleged attempt to
destroy her life by poison, and as a result of a domestic
difficulty between her and plaintiff in error, Mrs. Lee left
her home and went to the house of Mrs. Henry Ringler,
who lived near the Lee house. She remained at Mrs. Ring-
ler's home about two weeks and then moved into a small
house in the rear of the Lee residence. She lived alone in
the small house from about February 10 to March 13. On
Saturday night, March 12, 1910, the plaintiff in error pur-
chased three bottles of Schlitz beer from George Cook, a
saloon-keeper in Strawn, and took it home and placed it in
a feed-cutter in his barn. The three bottles of beer were
wrapped together in a paper. During the forenoon on
Sunday plaintiff in error was doing some chores about his
barn, and his little girls, Rosie and Laura, were with him
at the barn. The girls discovered the package in the feed-
cutter and asked their father what it was, and he told them
that it was beer. Plaintiff in error drank one bottle of beer
at the barn during the forenoon on Sunday. His daugh-
ters, Rosie and Laura, took one of the remaining two bot-
tles over to their mother and gave it to her. There is a
conflict in the evidence whether the bottle of beer was taken
to Mrs. Lee at the suggestion of the plaintiff in error or
whether it was first suggested by the children. The little
girls both testified that they asked their papa if they might
take one bottle of the beer to their mamma, and that he
said he did not care but that he would not take it himself,
and the girls took the beer in pursuance of their request,

and their statement is corroborated by plaintiff in error. The testimony of the little girls is discredited to some extent by the testimony of their mother, who swears that when the girls gave her the beer they said that "papa sent it to you." The remaining bottle of beer was taken to the house of plaintiff in error and served to the family at dinner. Mrs. Lee took the bottle of beer that was given to her over to Mrs. Ringler and offered to share it with Mrs. Ringler. Mrs. Ringler said that she had just had her dinner and did not care for any beer at that time, and suggested that Mrs. Lee put the beer on the back porch in a cool place and that they would drink it later. Some time in the afternoon the bottle of beer was brought in from the back porch, two glasses procured, and the bottle was opened and the beer poured into the glasses. Mrs. Ringler testifies that before the beer was opened she remarked to Mrs. Lee that she would not trust that beer if Lee furnished it. Both of the women testify that when the bottle was opened it popped very loud, and when poured into the glasses it foamed more than beer usually does. When the beer was poured in the glasses Mrs. Ringler insisted that it did not smell right and did not look right. She said that she smelt carbolic acid and refused to drink any of the beer but told Mrs. Lee that she could drink it if she wanted to. Neither of the women tasted the beer. It was poured back in the bottle, except a small quantity that was spilled on the table. The beer was then exhibited to a number of persons and finally was taken into the possession of the police and sent to the University of Illinois for chemical analysis. It was analyzed by Prof. Lindgren, a chemist for the engineering experiment station at the University of Illinois. Prof. Lindgren testified that he made a test of the bottle of beer sent him from Strawn and discovered that the bottle contained one and three-tenths grams of phenol. The foregoing is a general summary of the most important facts that were proven on the trial.

One of the errors assigned is, that the court improperly refused to allow plaintiff in error to show by Dr. Klemme that two grams of carbolic acid placed in a pint of beer would not be dangerous to human life. In his testimony for the People Prof. Lindgren was asked what amount of pure carbolic acid, such as he found in this beer, would be necessary to destroy human life. His answer was, "That depends upon the person." Thereupon the court asked the witness, "Would it kill some persons?" to which the witness replied, "Yes, it would; it is not considered a fatal dose." Thereupon the court said: "It was not necessarily a fatal dose because some persons it would not kill." The witness finally said, in answer to the court's further questions, that in his judgment the quantity of carbolic acid found in the pint of beer might kill some persons; that he did not believe it would kill a normal person. When Dr. Klemme was introduced for the plaintiff in error he testified that he had been a physician for twenty years; that he had known Mrs. Lee nine years, and that he had treated her eight years before, when she was suffering from carbolic acid poisoning; that he had experimented with putting carbolic acid in beer; that he had used a different brand of beer from that in question. After showing the doctor's familiarity with the effect of putting carbolic acid into beer, he was asked, "Are you able to state now what would be the effect of putting two grams of carbolic acid in beer?" This question was objected to and the objection was sustained. He was then asked if he knew what the effect of two grams of carbolic acid in a pint of beer would be,—as to whether it would be dangerous, or otherwise, if drank. An objection was also sustained to this question, and the plaintiff in error duly excepted.

The court's ruling was apparently based on the fact that the doctor's experiments had been with Anheuser-Busch beer and not with that known as Schlitz beer. The first question above to which objections were sustained had

reference to the chemical change, if any, that would be made in the appearance and the effervescent character of the beer by the addition of two grams of carbolic acid in a pint of beer. The importance of this question is apparent in connection with the conflicting testimony upon the effect of opening a bottle of beer and adding two grams of carbolic acid and again closing the bottle. It will be remembered that the testimony of Mrs. Ringler and Mrs. Lee agrees that when they opened the bottle of beer in question it popped and foamed more than usual. Other witnesses testified that when a bottle of beer is first opened it will pop and foam, but if it is closed and opened a second time it will neither pop nor foam. But conceding that the ruling was correct in respect to the first question because Dr. Klemme had not experimented with Schlitz beer, still the action of the court in sustaining the objection to the last question above set out cannot be sustained on that ground. Dr. Klemme had qualified as an expert. He was a physician of twenty years' experience, and, independently of any experiments, he was competent to give an opinion upon the question as to whether two grams of carbolic acid in a pint of beer would or would not be dangerous to human life. As already shown, the witness Lindgren, after a somewhat persuasive cross-examination conducted by the court, had stated that the quantity of carbolic acid found in this beer might be dangerous to human life. If the court regarded it as material for the prosecution to show the dangerous character of that quantity of carbolic acid, we are at a loss to see why it would not be material and proper for plaintiff in error to show, if he could do so, that that small quantity of carbolic acid in a pint of beer would be harmless. This inquiry was not irrelevant. The offense for which the plaintiff in error was being tried could not be established without proof that the carbolic acid was mingled with beer with the intent to destroy the life of Emma Lee. As bearing upon the intent, it was competent

for plaintiff in error to show that the quantity of carbolic acid which was found in the beer was wholly insufficient to produce death.

It is said by defendant in error that this evidence was inconsistent with the defense set up by plaintiff in error that he did not put any carbolic acid in this beer. The plea of not guilty to an indictment for a criminal offense is all that is necessary to render competent any evidence that tends to prove or disprove any issue involved, and it is no objection to testimony which tends to prove one defense that it is inconsistent with other defenses that may be relied on. The defendant is entitled to submit his testimony upon all defenses he has, to the jury. Had the court permitted plaintiff in error to prove that the quantity of carbolic acid found in this beer was insufficient to produce death, it might have caused the jury to entertain a reasonable 'doubt whether the plaintiff in error was guilty of mingling carbolic acid with this beer with an intent to cause the death of his wife. The question propounded to the witness was proper and the court erred in sustaining an objection thereto.

Numerous complaints are made by plaintiff in error in regard to the giving, refusing and modification of the instructions. Instruction No. 2 given on behalf of the People is as follows:

"A reasonable doubt requires, in law, that there should be more than the mere possibility of the defendant's innocence. You must have, in order to justify acquittal, a reasonable doubt of the defendant's guilt growing out of the unsatisfactory nature of the evidence against him. This doubt must be such a one as would induce a reasonable man to say, 'I am not satisfied that the defendant is guilty.' "

The objection pointed out to this instruction is, that it requires that the reasonable doubt which will justify an acquittal must grow out of the unsatisfactory nature of the evidence *against him,* and by implication excludes a

consideration of the evidence introduced on behalf of plaintiff in error from the consideration of the jury. The expression, "the evidence against him," might well be understood by the jury as requiring them to determine whether there was a reasonable doubt of the prisoner's guilt when viewed in the light of the evidence given on behalf of the prosecution. The law is, that if the jury entertain a reasonable doubt of the prisoner's guilt upon a consideration of all the evidence,—that given against him as well as that for him,—the accused is entitled to an acquittal. This instruction is inaccurate, misleading and erroneous. It is true that in other instructions the court directed the jury to consider the whole evidence and determine the question of guilt or innocence from such consideration, but that does not cure the error in this instruction, since it is impossible to tell whether the jury followed the instructions which told them to consider all the evidence, or the one which seems to authorize a conviction upon a consideration of the evidence for the prosecution alone.

Plaintiff in error makes serious complaint of the action of the trial court in asking numerous questions of the witnesses, both upon their direct and cross-examination. A careful examination of the abstract will disclose that this complaint is not wholly unfounded, but upon examination of the record we find that no objection was made and no ruling required at the trial. Without such objections and exceptions the question is not properly preserved for review. *Chicago Hansom Cab Co.* v. *Havelick,* 131 Ill. 179.

Plaintiff in error insists that the court erred in refusing to grant a new trial on the ground that the evidence is insufficient to justify a verdict of guilty. Inasmuch as the judgment is to be reversed and the cause remanded to be submitted to another jury we do not desire to express any opinion with reference to the questions of fact involved, except to say that the case is so close upon the facts as to

require strict accuracy in the rulings of the court upon the evidence and the instructions.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*