(No. 28472.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HOMER S. EDWARDS, Plaintiff in Error.

*Opinion filed March 21, 1945.*

HAROLD J. BANDY, of East St. Louis, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and JOSEPH B. SCHLARMAN, State's Attorney, of Carlyle, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Homer S. Edwards, plaintiff in error, was convicted in the circuit court of Clinton county of an assault with intent to murder Charles Beninati. He was sentenced on the verdict to serve a term in the penitentiary of not less than one and not to exceed three years. He prosecutes this writ of error for a review of the record.

At the time of the alleged offense on August 8, 1943, defendant was 60 years of age and had lived with his family in the city of Carlyle for many years, and for more than twenty years had owned and operated a barber-shop in said city. The complaining witness, Charles Beninati, also lived in Carlyle and was the manager of a motion picture theatre in said city. It seems, from the evidence, the difficulty between these parties arose from the fact Beninati had quit advertising in the *Carlyle Democrat,* a newspaper published by Edward Spieth, son-in-law of the defendant.

The contentions by which a reversal of the judgment is sought are: (1) That as the case is close upon the facts it is important that the record be free from error;

(2) that the State's Attorney committed reversible error in the cross-examination of a witness in asking impertinent and irrelevant questions which tended to prejudice the witness in the minds of the jury; (3) that instructions Nos. 4 and 8, given at the request of the prosecution, were erroneous.

The testimony on the part of the People tended to prove that on the evening of August 8, 1943, the complaining witness, after being followed by the defendant, was stabbed or cut with a knife while on the stairway leading to the telephone office located in the Farmers and Merchants Bank building where the complaining witness, as he testified, had gone for the purpose of· calling the sheriff to prevent his being further molested by the defendant. On the other hand, testimony was offered on behalf of the defendant tending to show he was being assulted and used his knife in his necessary self-defense. The evidence reveals that there were no witnesses to what occurred between these two men in the stairway, and their statements are diametrically opposed. Complaining witness testified that when he entered the building and was going up the stairway to the telephone office he was followed by the defendant, who was cursing and abusing him; that when he reached the office door he found it locked; that he turned around to go down the stairway and found defendant blocking his way, still cursing him; that he told defendant to get out of his way, and as he did not move he pushed him aside so he could go down the stairs and at that instant the defendant whacked him with some instrument. The defendant testified that he walked up the stairway with the prosecuting witness trying to reason with him, telling him that he did not mean any harm by anything he had said and was merely joking; that when he reached the top of the stairs the complaining witness grabbed him by the throat, commenced choking him until he got blind; that believing he was going to be

killed he pulled his knife and slashed the complaining witness, shoving him as hard as he could. Much of the testimony as to events both before and immediately after the affray was as conflicting as that given by the participants. Where evidence in a criminal case is conflicting in its nature, it is highly essential, for a proper consideration of the facts by a jury, that the jury be correctly instructed.

The defendant assigned as error the giving of erroneous and prejudicial instructions to the jury at the request of the prosecution and complains of People's instructions Nos. 4 and 8, which read as follows:

"No. 4. The court instructs the jury that if you believe beyond a reasonable doubt from the evidence that any witness in this case, has knowingly and willfully sworn falsely on this trial, to any matter material to the issue in this case, then the jury are at liberty to disregard the entire testimony of such witness, except in so far as it has been corroborated by other credible evidence or facts and circumstances proven on the trial. The question of weight and credit to be given to each and every witness on either side is entirely for the jury.

"No. 8. The jury is instructed that the rule requiring the jury to be satisfied of the guilt of the defendant from the evidence beyond a reasonable doubt in order to warrant a conviction is complied with if, taking the testimony altogether, the jury are satisfied beyond a reasonable doubt that the defendant is guilty. The reasonable doubt that the jury is permitted to entertain to authorize an acquittal, must be as to the guilt of the accused on the whole evidence and not as to any particular fact in the case and not necessary to constitute the crime charged."

Such instructions have been many times condemned and held to be improper by this court. We have also many times held the giving of such instructions is not reversible error where other instructions given in the case define the essential elements of the crime with which the

defendant stands charged. We held in the case of *People* v. *Wells,* 380 Ill. 347, that such instructions leave the jury to determine the legal questions as to what are and what are not material facts or essential elements of the crime charged, and that such instructions are improper. We further stated and pointed out in that case, however, that reversible error in the giving of such instructions depends upon whether or not other instructions given in the case defined the essential elements of the crime with which defendant was charged. The defendant contends that other instructions given in this case do not define the essential elements of the crime and that the giving of such instructions constituted reversible error. The People's brief admits that similar instructions have been held to be erroneous in cases cited by counsel for the defendant, but contends that the court has repeatedly held that this type of instruction is not improper if other instructions are given defining the material issues of the offense in question, and cites the case of *People* v. *Lynn,* 387 Ill. 549, where the court approved a similar instruction for the reason that other instructions were given which adequately defined the material issues of the case. In that case this court, at page 554, said: "'The practice of giving such instructions without explanation as to what are 'material facts' or 'material allegations' has been condemned. (*People* v. *Berne,* 384 Ill. 334; *People* v. *Wells,* 380 Ill. 347; *People* v. *Flynn,* 378 Ill. 351.) Other instructions explained to the jury the essential and material elements of the offense charged, and taking the instructions as a series the jury was not at liberty to determine its own standard of 'material facts' or 'material allegations.' "

The prosecution contends that other instructions sufficiently defined the essential elements of the crime and calls the court's special attention to instruction No. 6 in that regard. Said instruction, given at the request of the People, is as follows:

"No. 6. The court instructs the jury that if you believe, from the evidence and the facts and circumstances in evidence beyond a reasonable doubt that the defendant, Homer S. Edwards, with malice aforethought, made an assault with a deadly weapon upon Charles Beninati, with intent to kill the said Charles Beninati, in manner and form as charged in the indictment, and if you further believe from the evidence beyond a reasonable doubt that such assault was not in the necessary defense of the said Homer S. Edwards, and, if you further believe from the evidence beyond a reasonable doubt that at the time the assault was made, Homer S. Edwards was acting not in self defense, but through malice and intended to kill Charles Beninati, then you should find the defendant, Homer S. Edwards guilty of an assault with intent to murder."

It can readily be seen that this instruction improperly advised the jury that the defendant should be convicted if the jury believed defendant's act was not committed in self-defense. As far back as the case of *People* v. *Durand,* 307 Ill. 611, the giving of an instruction of this nature was held to be reversible error. The test was whether, under the evidence, the defendant honestly believed he was in such danger, or apparent danger, as required the means taken for his protection. The fact that other instructions might be given as a series correctly stating the law does not cure such an erroneous instruction. An incorrect instruction in a case where the evidence is conflicting is not cured by a correct one, for the very adequate reason it is impossible to determine which instruction the jury followed. *People* v. *Allen,* 378 Ill. 164; *People* v. *Bradley,* 324 Ill. 294; *People* v. *True,* 314 Ill. 89; *People* v. *Dettmering,* 278 Ill. 580; *People* v. *Lee,* 248 Ill. 64; *People* v. *Novick,* 265 Ill. 436; *People* v. *Casino,* 295 Ill. 204.

This court, in the *Allen case,* at page 166, said: "This type of instruction was condemned in *People* v. *Clark,* 368

Ill. 183, where this court said: 'The true test is what the defendant believed was necessary, acting as a reasonable man, not whether the jury believed from the evidence that it was necessary or apparently necessary.' In that case we followed *People v. Durand*, 307 Ill. 611, where an instruction in almost the identical language was given. In commenting upon it the court said: 'The jury were told by the instruction that whether or not the defendant was justifiable under his plea of self-defense depended upon whether or not they believed, beyond a reasonable doubt, from the evidence, that it was necessary or apparently necessary in order to save his own life,' and it was there pointed out that it is not a question of whether or not the evidence shows the danger to be real, but as to what the defendant honestly believed, as a reasonable man, at the time of the commission of the crime. Examination of People's instruction No. 32 shows that it incorporates the statement condemned in the foregoing cases, which informs the jury that if it, the jury, believe that the plaintiff in error killed the deceased, and if it, the jury, believes the killing was not necessary, or apparently necessary, then it is the duty of the jury to convict. As we have repeatedly pointed out, the test is not whether the jury believed the facts justified the slaying of the deceased in self-defense, but whether under the evidence the defendant honestly believed he was in such danger, or apparent danger, as required the killing of his opponent. The giving of instruction No. 32 was error."

There could be no question that instruction No. 6, given at the request of the People, constituted reversible error and we hardly see how it could be said that such instruction, specially pointed out to the court, aided the defective instructions given. Aside from the fact that other instructions, not pointed out, might have adequately defined to the jury the material issues and material facts, the instruction given was highly improper and, under the

facts and circumstances of this case, constituted reversible error.

It is further contended by the defendant that the State's Attorney committed reversible error when he inquired of Dr. R. S. Wallace, called as a witness in behalf of defendant, as to whether or not the doctor had been involved in some difficulty pertaining to narcotics. The question was highly improper, had no connection with the crime for which the defendant was on trial and could have been asked only for the purpose of prejudicing the defendant. Dr. Wallace had been called as a witness for the defendant and testified to facts as to treatment he gave defendant, describing small crescent-shaped cuts in the front of his neck and to the right of his Adam's apple and ten or more to the back of his neck. He testified that in his opinion it could hardly be anything else but cuts from fingernails or an instrument shaped to make cuts like fingernails. His examination of the defendant was made shortly after the alleged occurrence and his testimony weighed heavily in support of defendant's contention that he was assaulted and the extent to which he contended he was being choked which necessitated his acting in self-defense. The question asked did not have anything to do with the crime nor was it asked in pursuance of anything brought out in direct examination. It was apparent under the conditions mentioned it was for the sole purpose of prejudicing the minds of the jury against an important witness and lessening the weight to be given his testimony, which could only result in serious injury to defendant. No justification can be found for such cross-examination. This examination, as well as the improper instructions given, went to the very 'essence of defendant's claim of self-defense.

For the errors pointed out, the judgment of the circuit court of Clinton county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*