THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ODESSA
BAILEY, Defendant-Appellant.

(No. 58160; 

First District (3rd Division)—October 18, 1973.

Paul Bradley, Deputy Defender, of Chicago, (Kenneth L. Jones, Assistant Appellate Defender, and Edwin McCullough, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (James S. Veldman and Daniel F. Murray, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with the voluntary manslaughter of her husband, Leroy Bailey. After a jury trial in the circuit court of Cook County she was found guilty of that crime and was sentenced to a term of one to three years. Defendant appeals, contending that the trial court erred in denying a motion to suppress her oral and written statements; that the giving of a certain instruction to the jury constituted prejudicial error; and that she was not proved guilty of the crime beyond a reasonable doubt.

Defendant was the sole witness to the occurrence, and her statements made prior to and during trial constituted essentially all the evidence in the case.

On November 5, 1970, at approximately 8:00 P.M., the police received a telephone call from defendant reporting that her husband, a Chicago police officer, had been shot. When the police arrived, they found the

husband in the basement seated in a chair and bleeding from a head wound. He died later after being taken to a hospital. A revolver was found in his pocket. Defendant told the police that she had been out, and when she returned she heard a noise. She went to the basement and found her husband bleeding. This statement was supported by defendant's daughter.

Defendant agreed to accompany the police to the police station to reduce her statement to writing. She also gave permission to one of the police officers to search her home. At the police station, defendant gave a two page written statement to the effect that she found the deceased bleeding. She also stated that the only gun in the home was that owned by the deceased.

Meanwhile, the police had found a second revolver with one spent casing in one of the closets at defendant's home. The gun was taken to the police station and shown to defendant, who denied any knowledge of it. While one officer left to determine ownership of the gun through registration records, the other officer continued to question defendant about the gun. Defendant then admitted ownership of the gun; thereafter the police officer returned to state that defendant was the registered owner of the gun. For the first time that evening the police then informed defendant of her constitutional rights.

An assistant State's Attorney was summoned to the police station, and before taking a statement, again fully informed defendant of her constitutional rights. Defendant gave a statement that, after the deceased struck and kicked her for no apparent reason, she went to the bedroom, took a gun from her night stand, walked down to the basement where her husband was seated, and shot him "in the heat of the moment."

At trial defendant repudiated her statements and testified that her husband, while intoxicated, threatened and cursed her. He also struck and kicked her repeatedly. She went to the bedroom and obtained a gun. Defendant proceeded to the basement and the deceased followed her. She placed her gun on a desk, and the deceased took a gun out of his pocket and threatened her. Defendant then shot the deceased.

We initially shall consider defendant's contention that the giving of a certain instruction offered by the State, over defendant's objection, constituted reversible error. The instruction is as follows:

> "A person is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

The foregoing instruction purports to be I.P.I. Criminal 24.09 modified. The modification consisted of substituting the words, "A person is justified in the use of force only if * * *," for the words, "The person who initially provokes the use of force against himself * * *". The jury also received another instruction dealing with self-defense, I.P.I. Criminal 24.06.

■■ The instruction as modified and as given to the jury misstated the law, and subjected defendant's conduct to a standard not the law in Illinois. The defendant was not required to prove that she had exhausted all reasonable means of escape other than deadly force before successfully establishing self-defense. As long as he has a legal right to be where he was at the time of the fatal confrontation, a defendant is not required to retreat but may stand his ground. (*Hammond v. People* (1902), 199 Ill. 173, 64 N.E. 980; *People v. Sterankovich* (1924), 313 Ill. 556, 145 N.E. 172.) The present instruction was extremely prejudicial to defendant. She had testified that she entered the basement armed with a gun. Her testimony obviously indicated that she had not exhausted or even attempted any means of escape. The instruction, with its incorrect requirement of escape, actually precluded the jury from finding that defendant exercised justifiable force, her primary defense.

■■ In *People v. Durand* (1923), 307 Ill. 611, 139 N.E. 78, our Supreme Court found an instruction similar to the present one to be "very erroneous and prejudicial." We likewise hold that the instruction in this case was extremely prejudicial and requires us to remand the cause for a new trial. We also hold that under such circumstances the extreme error caused by the giving of this instruction was not cured by the giving of another instruction which correctly stated the law of self-defense. See *People v. Edwards* (1945), 389 Ill. 563, 60 N.E.2d 100.

Since we are remanding the cause for a new trial, we shall consider defendant's contention that the trial court erred in denying her motion to suppress her written and oral statements to the police and prosecutor.

■■ In *Miranda v. Arizona* (1966), 384 U.S. 436, the Supreme Court held that before any statement by a defendant stemming from a custodial interrogation may be substantively introduced into evidence by the prosecution, the State must first prove that defendant was fully informed of his constitutional rights. The *Miranda* court defined custodial interrogation as any interrogation initiated by police while the defendant is in custody or while he has been deprived of his freedom of action in any significant way. Since then, courts of review have often experienced great difficulty in fixing the time when, absent formal charge or arrest, custody of a defendant is established. A proper analysis should consider the amount of knowledge possessed by the police at the time of the interro-

gation, the tone and method of the questioning, and who, if anyone, was the focus of the investigation at the time of the interrogation. See *United States v. Hall* (1969), 421 F.2d 540.

■■ In that light, we find that the first statement given by the defendant to the police was properly admitted into evidence. The statement was made immediately after the arrival of the police at the scene and was made in response to a question as to what happened. The police had no knowledge of the facts; a routine police investigation was about to begin. The holding in *Miranda* was not intended to restrict such general, on-the-scene questioning. *People v. Parks* (1971), 48 Ill.2d 232, 269 N.E.2d 484; *People v. Tate* (1970), 45 Ill.2d 540, 259 N.E.2d 791.

■■ We likewise hold that the second statement, a written summary of the first oral statement, given to the police at the station was correctly admitted into evidence. It would appear that normal police procedures require asking a person making an oral statement at the scene to go to the police station to reduce the statement to writing. The fact that the statement was given at the police station of itself does not make the defendant the focus of the criminal investigation at that time.

The issue as to the admissibility of the defendant's next statement at the police station that she owned the second gun is more troublesome. While defendant was at the station giving a written summary of her previous oral statement, a police search conducted at her home with her consent produced the second revolver. Defendant was shown the weapon, and she denied any knowledge of it. While one officer went to determine the ownership through registration records, the other officer continued to question defendant regarding the gun. Defendant then admitted ownership of the gun. Defendant was informed of her constitutional rights against self-incrimination when the police officer returned with the information from the records that defendant was the registered owner of the gun.

■■ Although the record is scanty as to the nature of the police officer's interrogation of defendant regarding the gun, he testified that the interrogation involved "general lines of questioning" concerning the finding of the second weapon in the home. Defendant did not characterize the questions as harsh or accusatory, and defense counsel did not cross-examine the officer as to the manner of the questioning. Under such circumstances, we believe that defendant had not become the focus of the investigation. We also believe it significant that the police informed defendant of her rights as soon as they learned she owned the gun. Until that point in time, there was no reason for the police to have disbelieved defendant's earlier exculpatory statement, supported as it was by her

daughter. We therefore hold that the trial court correctly admitted the third statement into evidence.

■■ Defendant freely admits that her statement to the assistant State's Attorney was preceded by a full explanation as to her constitutional rights. However, citing *Westover v. United States* (1966), 384 U.S. 436, she argues that the warnings came too late to dissipate the effect of the prior invalid questioning. Since we have held that the prior questioning did not result from improper custodial interrogation and that *Miranda* thus did not apply, no error was committed in admitting the statement given to the prosecutor into evidence.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Judgment reversed and remanded.

DEMPSEY, P. J., and McGLOON, J., concur.