THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN E. JONES, Defendant-Appellant.

First District (4th Division)    No. 76-1519

Opinion filed April 6, 1978.—Rehearing denied April 20, 1978.

Ralph Ruebner and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendant, John E. Jones, was indicted for the attempt murder of William James (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) and attempt armed robbery of Kathryn James (Ill. Rev. Stat. 1975, ch. 38, par. 8—4). After a jury trial in the circuit court of Cook County, he was found guilty of attempt armed robbery, but not guilty of attempt murder. He was sentenced to a term of 6 to 18 years in the penitentiary. In this appeal, he contends that the trial court erred in admitting an inculpatory statement he made to the police without the benefit of the *Miranda* warnings. The State argues that the *Miranda* warnings were not required because defendant made the statement while the police were conducting an on-

the-scene investigation. The trial court conducted a hearing on the motion to suppress before trial but did not deny the motion until it had heard additional trial testimony.

This case grew out of a shooting incident at a south suburban Chicago tavern. Five occurrence witnesses testified for the State at trial. Their testimony showed that defendant and his accomplice entered a tavern known as the Recovery Room. Defendant had a revolver; his partner a sawed-off shotgun. Although it was not entirely clear whether the accomplice announced a holdup, defendant pointed his weapon successively at two young men in the tavern and frisked them, stating that he did not want their money but wanted the money of the owner of the tavern, Kathryn James. Defendant's accomplice poked at Mrs. James with his shotgun and told her to get the keys to the liquor store located next door, which she also owned. As soon as the accomplice had marched her outside, her husband, William James, opened fire on him with a gun. The accomplice returned the fire and fled; defendant then fired at Mr. James. At the conclusion of the gunfight, during which he used a bystander as a shield, the defendant was shot. He then asked the patrons to get him a doctor. When the police arrived, defendant told them that he and his partner were in the process of holding up the tavern when the bartender shot him. He further stated that he and his partner had previously stolen a car. This statement was admitted at trial as substantive evidence over defendant's objection.

Defendant testified that he had gone to the liquor store, but Mrs. James refused him service because of his race. One week later defendant and his partner went to the tavern after the liquor store had closed to harass Mrs. James. They were refused service at the tavern, after which his partner announced that they were going to "tear up the place." When the defendant heard shooting, he began firing in the air. He did not remember having a conversation with the police after he was wounded.

A further examination of the evidence adduced at trial and at the hearing on the motion to suppress is necessary to decide whether defendant was a subject of "custodial interrogation." The evidence showed that Patrolman Donald Morrison of the Sauk Village Police Department responded to a radio message of a "man shot" at the Recovery Room tavern. He entered the tavern with Officer Gerald Poppers, who arrived at the scene separately. Morrison and Poppers were the first police to arrive. When Morrison entered, someone behind the bar said, "I shot him." Mr. James handed Morrison a gun and told him that it was the weapon he took from the defendant. Morrison saw defendant lying on the floor with blood around him. He was conscious at this time. Morrison asked defendant if he was all right and defendant told him that he had been shot in the arm. Morrison then called an ambulance.

Morrison was present when Poppers subsequently asked the defendant what happened, to which the defendant made the inculpatory statement now objected to.

Morrison testified that he did not inquire of the patrons in the tavern about the circumstances of the shooting before talking to the defendant. The first he knew of the robbery attempt was when defendant made his statement. Morrison and Poppers were not the arresting officers.

Defendant testified that after he was struck by the bullet he did not remember anything until he awoke in the hospital. He denied having any conversation with either Morrison or Poppers. Bobby Young, a patron, testified that as the police were entering the tavern he was going outside. He did not observe the police having a conversation with the defendant. John Vaught, another patron, testified that after the police had arrived he observed an officer, whom he could not identify, have a conversation, but was unable to remember it.

At trial, the additional facts came out that Officer Poppers talked to someone else in the tavern before he talked to the defendant, but the record does not show what Poppers knew as a result of this conversation. During argument on the motion to suppress, the State proceeded on the basis that even though Poppers had this conversation, his subsequent conversation with the defendant was still part of his initial investigation. The police report indicates that Poppers questioned defendant while they were waiting for the ambulance which Morrison had called.

The issue presented is whether the defendant was the subject of a custodial interrogation so as to make the giving of the *Miranda* warnings a prerequisite to questioning. Defendant contends that because of his physical condition at the time of questioning the police had more control over him than if he had been arrested and, therefore, *Miranda* warnings were required. We find this argument unpersuasive. In *Miranda v. Arizona* (1966), 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630, the Supreme Court held that:

> "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized."

Here the defendant was neither taken into custody nor deprived of his freedom by the authorities. That he was somewhat incapacitated had nothing to do with the police conduct in questioning him.

The record shows that the police were conducting a general on-the-scene questioning which does not require *Miranda* warnings. (*People v. Tolefree* (1972), 9 Ill. App. 3d 475, 478, 292 N.E.2d 452, 454; *People v. Tripkovich* (1972), 6 Ill. App. 3d 37, 45, 284 N.E.2d 323, 329; *People v. Reeder* (1971), 2 Ill. App. 3d 471, 474-75, 276 N.E.2d 768, 771.) However,

defendant argues that the questioning had passed the fact-finding stage and had entered the accusatory stage. Defendant claims that because the record did not disclose what Officer Poppers knew before he questioned defendant, the State failed to affirmatively show that the questioning was not preceded or accompanied by custodial interrogation. *Allen v. United States* (D.C. Cir. 1968), 404 F.2d 1335.

In this regard, it has been said that a proper analysis of whether the defendant was the subject of a custodial interrogation should include the amount of knowledge possessed by the police at the time of the interrogation, the tone and method of questioning and who, if anyone, was the focus of the investigation at the time of questioning. *People v. Bailey* (1973), 15 Ill. App. 3d 558, 561-62, 304 N.E.2d 668, 670.

There has been much litigation concerning the importance of "focus" in determining whether an interrogation was custodial. In *United States v. Hall* (2d Cir. 1969), 421 F.2d 540, 543, Judge Friendly held that "focus" alone does not trigger the need for *Miranda* warnings. After examining the *Miranda* decision, the court stated that focus as used in *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, means custody, but added:

> "This is not to say that the amount of information possessed by the police, and the consequent acuity of their 'focus,' is irrelevant. The more cause for believing a suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers *Miranda*, and *vice versa*. But this is simply one circumstance, to be weighed with all the others." *Hall*, at 545.

In *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714, the Supreme Court stated:

> "Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." Accord, *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.

■■ These cases indicate that the amount of information possessed by the police is a factor tending to show whether or not the police have created an atmosphere of significant restraint. While there is nothing to show what Poppers knew when he questioned defendant, we are satisfied that the record as a whole affirmatively demonstrates that the questioning did not occur in a coercive environment. The questioning took place at the scene soon after the two police officers arrived, and they were the only

two officers present when defendant made his statement. The simple question "What happened?" does not connote an overbearing or coercive tone. Although Officer Poppers' testimony on the subject would have been helpful, we find no Illinois case holding that the State had to produce him. See *People v. McClure* (1976), 43 Ill. App. 3d 1059, 358 N.E.2d 23.

■■ Even assuming that the trial court erred in admitting the statement in evidence, we find that this error would be harmless error which would not require reversal. We are satisfied that defendant's statement did not prove an element of the crime not established by other properly admitted evidence. Therefore, we are able to say that, given the overwhelming proof of defendant's guilt, the error, if any, was harmless beyond a reasonable doubt. See *People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484.

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI and LINN, JJ., concur.