THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD PAUL GAN, Defendant-Appellant.

Fourth District   No. 15286

Opinion filed August 22, 1979.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Marc D. Towler and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant was convicted of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) and theft of property having a value of more than $150 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1) in a jury trial. He appeals, presenting questions concerning evidentiary rulings and sufficiency of the evidence.

He also contends that his sentence of 3 to 9 years' imprisonment is excessive. We affirm.

On December 14, 1977, an information was filed charging the defendant with burglary and theft of property with a value in excess of $150. Prior to trial, the defendant filed a standard motion for discovery which requested, *inter alia*, any oral or written statements made by the accused. Eight days later, the State filed its response, claiming that no statements were made, thus laying the foundation for an issue on appeal.

The trial commenced on May 24, 1978, and Randy Thornton was the first witness for the State. Thornton described to the jury how he arrived at the Ben Franklin Store in Georgetown, Illinois, on December 13, 1977, at approximately 8:15 a.m. He was the assistant manager of the establishment. Upon entering, Thornton noticed that a merchandise display unit, which had been flush against a hole in the back wall of the store, had been tipped over. A pair of brown Wolverine boots, size 9 or 9½, with safety toes, had been removed from the store. In an aisle there were also several of the store's yellow shopping bags, containing merchandise which included dolls. The coin drawers had been opened.

A leak in the back of the store led Thornton to the roof to remove ice. Once having attained this vantage point, his attention was drawn to a red Chevrolet pickup truck, parked in a lot off the alley in back of the store, approximately 25 to 30 feet from the door. No one was around the truck, but he saw shopping bags in the back of the truck which he believed were from the store. Thornton then accompanied Georgetown Police Chief Keith Emory to the truck where he pointed out a pair of steel-toe, brown, Wolverine boots, size 9 or 9½, as being familiar. He also found coin wrappers in an area behind the store.

Joe Wasko, the manager of the store, stated that he arrived at approximately 7:40 a.m. on the day in question and found merchandise scattered about and a fixture removed from its place over the access hole. The back door had been opened from the inside, so he called the police.

Three cash registers had been pried open and approximately $528 in currency and coins, some in rolls, were missing. He could not determine whether the items in the aisle were from the store's inventory, but to the best of his knowledge, his was the only store in Georgetown which sold that type of doll.

Chief Emory testified that when he arrived at the store at 8:10 a.m., he was told that there were two men in a pickup truck in the rear of the store. The truck was stuck in the snow.

As he moved his patrol car north into the alley, he saw defendant's brother, William Gan, running from the truck. The defendant was standing on the driver's side of the truck with his hand on the door knob. From the passenger side of the truck, Chief Emory saw some dolls

protruding from a yellow sack and some tan Wolverine work shoes on the floor. He then asked the defendant where he had gotten the merchandise, and the defendant stated that he had gotten it from a friend. Chief Emory then asked the defendant who owned the truck, and the defendant replied that the truck belonged to Pearson Roofing Company, his employer.

At this point, defense counsel objected to the testimony, claiming that the defendant's identification of himself as the driver of the truck was involuntary and had not been disclosed previously to defense counsel in discovery. An *in camera* examination was held wherein Chief Emory testified that when he approached the defendant, he was aware that a burglary had been committed and that the defendant was a suspect in the chief's mind. According to Chief Emory, the defendant had not been free to leave and was in custody at that time. He testified that it was his intention to place defendant under arrest after asking defendant a few questions about the merchandise. The court overruled the defense objection.

The jury was brought back in and Chief Emory testified that he discovered a pile of 20 to 25 coin wrappers about 10 feet from the truck. He also stated that after he arrested and handcuffed the defendant, he found no unusual amount of coins on the defendant's person, nor any items identified as having been the property of the store.

The jury returned verdicts of guilty on both charges and the trial court entered judgment. The theft conviction was later set aside on post-trial motion, and a sentence of from 3 to 9 years' imprisonment was imposed.

The defendant initially claims that it was error to admit statements "which practically amounted to confessions" into evidence where statements were elicited in violation of the standards set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

■■ It is clear that the *Miranda* warnings must be given prior to custodial interrogation. It is equally clear, however, that the *Miranda* holding does not apply to "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." (384 U.S. 436, 477, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.) The distinction has sent lower courts scurrying in an attempt to develop a hard and fast rule as to what constitutes "custodial."

In discussing the application of *Miranda*, the Supreme Court stated in *Oregon v. Mathiason* (1977), 429 U.S. 492, 494-95, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 713-14:

> "Our decision in *Miranda* sets forth rules of police procedure applicable to 'custodial interrogation.' 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a

person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' 384 U.S. at 444. * * *

          * * *

Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited."

A number of factors have been considered by the courts of this State in determining whether a person's freedom of action had been sufficiently restrained. Some courts have looked at the subjective knowledge of the police officer or the tone or mode of questioning. (*People v. Bailey* (1973), 15 Ill. App. 3d 558, 304 N.E.2d 668.) Others have looked to see whether the defendant reasonably believed he was free to leave. *People v. Helm* (1973), 10 Ill. App. 3d 643, 295 N.E.2d 78.

■■ Under either approach, the defendant in this case was "in custody." We note, without particular emphasis: The arresting officer stated that he knew that a burglary had been committed and in his mind the defendant was a suspect; he also stated that defendant was not free to leave and that he was going to place the defendant under arrest after asking him about the merchandise; the questions asked in this case were specifically addressed at ascertaining what relationship, if any, the defendant had to the crime being considered. Under these circumstances, the *Miranda* warning should have been given prior to the questioning.

This does not, however, end our inquiry. The State argues that a reversal is not warranted because the statements did not establish an element of the crime not established by other properly admitted evidence. (*People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389; *People v. Jones* (1978), 59 Ill. App. 3d 950, 376 N.E.2d 618.) As the court in *Landgham* stated:

"Errors of a constitutional nature can be regarded as harmless, if we are able to declare beyond a reasonable doubt that the error did not contribute to the finding of guilty. Chapman v. California, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967); People v. Smith,

38 Ill. 2d 13, 230 N.E.2d 188. When we say the error did not contribute to the finding of guilty, we mean that the erroneously admitted evidence did not prove an element of the crime not established by other properly admitted evidence. In making this declaration '[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the [oral statements] on the minds of an average jury.' Harrington v. California, 395 U.S. 250, at 254, 23 L. Ed. 2d 284, 289 S. Ct. 1726 (1969)." 122 Ill. App. 2d 9, 24-25, 257 N.E.2d 484, 492.

In this case guilt is clearly established beyond a reasonable doubt by other competent evidence. Without reciting all of the evidence in the case, we note the following. It was clearly shown that a merchandise display had been tipped over, thus exposing an access hole and that the back door had been opened from the inside. A pair of brown Wolverine shoes with safety toe, size 9 to 9½, had been removed from the store. A pair of identical shoes were found in the locked cab of the truck to which the defendant possessed a key. The defendant was found alongside the truck with his hand on the handle of the driver's door.

In light of this evidence, we cannot say that the failure to give the *Miranda* warnings, while error, constituted reversible error.

The defendant next contends that he was prejudiced by the admission of his statement that he was the driver of the truck, and that this statement was inadmissible due to the State's failure to disclose its existence during discovery. The defendant claims it was prejudicial in that it was the sole basis for the exclusive possession instruction. This argument ignores the fact that the defendant possessed the key to the locked truck in which the merchandise was found.

In the instant case, the State violated the discovery rules (Supreme Court Rule 412, 58 Ill. 2d R. 412) by not responding with defendant's statement about his being the driver of the truck. The State does not submit that it did not have knowledge of the statement. Rather, the State claims that defendant should not have been surprised. It points out that at the preliminary hearing, Chief Emory testified that the defendant was the driver of the truck and had been standing alongside it. The police report which was attached to the State's answer to defendant's discovery request stated that upon investigation the defendant was found to be in possession of stolen goods.

Defense counsel challenged the testimony at the *in camera* hearing and was allowed to extensively cross-examine Chief Emory about the defendant's statement. The defense counsel did not request continuance at the conclusion of the hearing in order to investigate further or to prepare any additional defense.

While we do not condone the actions of the State, which have

amounted to an inexcusable disregard for the discovery provision, we fail to find reversible error.

The defendant's next alleged error involved the testimony of Chief Emory wherein he stated that Thornton called to him from the roof of the building stating that the merchandise in the back of the truck appeared to be from the store. It is claimed that this was inadmissible hearsay evidence which should have been excluded. The trial court admitted the statement to lay the basis for the officer's subsequent questioning and arrest of the defendant. The defendant now asserts this was reversible error. The hearsay rule does not apply to testimony concerning out-of-court identifications made by a person testifying in court and subject to cross-examination. *People v. Breitweiser* (1976), 38 Ill. App. 3d 1066, 349 N.E.2d 454; *People v. Keller* (1970), 128 Ill. App. 2d 401, 263 N.E.2d 127.

Next, the defendant claims that the exclusive possession instruction should not have been given because there was no testimony at trial connecting the items in the truck with those missing from the store. He points out that the items which were found in the truck were never introduced at trial and that the only testimony directly related to these items was given by Chief Emory when he identified a photo of the items. He also points out that neither Thornton nor Wasko identified the items in the photograph as store merchandise. He acknowledges Thornton's testimony regarding the missing Wolverine boots and the dolls which were like those in the store, but asserts that there was no evidence that Thornton had inspected the boots or other items from the truck.

Thornton testified that he was certain that a pair of brown Wolverine shoes with safety toes, size 9 to 9½, were missing. He stated that he saw shopping bags identical to those of the store filled with merchandise in the back of the truck. Chief Emory stated that he saw a new pair of brown Wolverine steel-toed boots, size 9 to 9½, inside the vehicle. Given the nature of the items in question, the in-court identification was sufficient. While it is true that the items found were not introduced into evidence, rather only a photograph was used, there is little likelihood that the presentation of the nondescript items themselves in court would have either aided or hindered the identification.

■ The defendant also presents a reasonable doubt argument based upon the information. The amended information in this case alleged ownership of the premises in Joe Wasko. At trial, Wasko testified that the store was owned by the Joseph Fazio Trust, of which he was a trustee. The defendant argues that while Wasko testified that no one had permission to enter the premises, there was no testimony that the defendant did not receive permission from any other trustee. He contends that there was a material variance with respect to the ownership of the store such that he was misled in the preparation of his defense. He claims that he was prevented from asserting the defense that entry into the store

was authorized by a trustee other than Wasko and that the State failed to prove his entry was unauthorized.

In *People v. Gregory* (1974), 59 Ill. 2d 111, 319 N.E.2d 483, the supreme court stated that while it was necessary at one time for an indictment of burglary to identify the owner of the building concerned, such practice was no longer required. The court determined that an indictment was adequate when its allegations were sufficiently particularized so that the accused is informed of the offense being charged, enabled to prepare his defense, and protected against being prosecuted later for the same crime. The *Gregory* indictment which contained the date of the alleged burglary, the town, the address of the premises, the name of the establishment, as well as allegations regarding the intent and lack of authority, was deemed to be sufficient.

Similarly, the court in *People v. Flowers* (1977), 52 Ill. App. 3d 301, 367 N.E.2d 453, extended *Gregory* when it held that it was unnecessary for the State to prove the identity of the owner of the burglarized premises, providing the proof otherwise established that the entry was unauthorized and the pleadings and proof were sufficiently specific to enable the defendant to present a defense.

In this case, count I of the amended information alleged that Ronald P. Gan, on December 13, 1977, committed the offense of burglary because he knowingly and without authority entered a building of Joseph Wasko, situated at 104 North Main Street. The location of the building was correctly given. In light of *Gregory* and *Flowers*, the allegations of the information were sufficient to enable the defendant to prepare a defense to the unauthorized entry element of the charge.

Lastly, the defendant urges error in that the sentence of 3 to 9 years of imprisonment was excessive and an abuse of judicial discretion. The defendant contends that the trial court imposed an enhanced minimum sentence (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(3)) because of the defendant's poor work record. While it is true that the trial court did consider this factor, it also considered that the defendant had previously been convicted for another burglary; that the offense in question was committed while the defendant was on probation; that defendant's conduct did not indicate that he had become rehabilitated during his probationary period; and that the sentence was necessary to deter this type of criminal activity and protect the public.

In light of these facts, it cannot be said that the trial court abused its discretion in rendering its sentence nor that the sentence was excessive.

For the above stated reasons, we affirm.

Affirmed.

REARDON, P. J., and TRAPP, J., concur.